Ruth Ann PROBST, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: Nov. 3, 1987.
Briefs Supplemented: March 1, 1988.
Decided: March 23, 1988.
Submitted En Banc: June 21, 1988.
Decided En Banc: Aug. 10, 1988.

Bernard J. O'Donnell, Asst. Public Defender, Wilmington, for appellant.

Timothy J. Donovan, Jr., and Richard E. Fairbanks, Jr., Deputy Attys. Gen., Wilmington, for appellee.

Before CHRISTIE, C.J., and HORSEY and HOLLAND, JJ.

HOLLAND, Justice:

The appellant, Ruth Ann Probst ("Probst"), was convicted in the Superior Court by a jury of Second Degree Assault and Possession of a Deadly Weapon Dur-

ing the Commission of a Felony. On appeal, Probst contends that the trial court erred in instructing the jury. We find that the order of the jury instructions and the inaccurate use of gender had such potential for juror confusion that the reversal of Probst's convictions is required. We also find that the potential for confusion was compounded by the failure to instruct the jury that it must unanimously agree on a single theory of liability for Probst's guilt.

### Facts

Probst and the victim, Frank Walla ("Walla"), lived on adjoining properties in a rural area near Hartley, Delaware. Walla has lived on his property since 1959. Probst moved into her residence in 1983. Apparently, since the time Probst moved into the area, she and Walla have continuously disputed their boundary lines and the use of a road that adjoins Walla's property and leads to Probst's property.

The charges against Probst came about as the result of a shooting incident that occurred at about 8:00 p.m. on April 4, 1985. The testimony at trial was in conflict. Walla testified that he was sitting outside of his home when he observed a pick-up truck come to a stop in the road that borders his property. According to Walla, the truck stopped behind an outbuilding that he used for storage. Walla stated that he feared that the pick-up truck's occupants might be stealing things from his storage building.

Walla armed himself with a .22 caliber pistol and "went to get a closer look." Walla testified that when he called out and asked the occupants of the pick-up truck what they were doing, he was wounded by a blast from a shotgun. Walla then fired his pistol, striking Kathryn Rickley ("Rickley"), a friend of Probst. Although wounded, Walla was able to return to his trailer to call for the police and an ambulance.

Probst offered a different version of the incident. She testified that earlier in the evening of April 4, 1985, someone had shot at her as she opened the gate to her property upon her return home from work. Sometime later, her friend, Rickley, arrived and told Probst that the lane leading to Probst's house was blocked with tires. Probst suspected that Walla was responsible for both incidents.

Probst called her brother, James Miller ("Miller"), and told him what had happened. Miller immediately went to Probst's home armed with a shotgun. Probst, Miller, Miller's ten-year-old son, and Rickley got in Miller's pick-up truck and drove down the lane. Probst, armed with her own shotgun, rode in the bed of the pick-up truck with Miller's son. Miller drove and Rickley sat beside him in the cab.

Probst testified that they stopped the truck in the portion of the lane which borders Walla's property. Rickley began removing the tires out of the roadway. According to Probst, Walla shouted at Rickley and then started shooting, hitting Rickley in the leg. Probst stated that she fired her shotgun once, straight in the air to frighten Walla, and then went to Rickley's aid. Probst admitted that when Walla continued shooting, however, she implored her brother to help. Miller then fired his shotgun twice in the direction of Walla.

Miller and Probst were both arrested that night. However, the charges against Miller were dismissed on the condition that he testify truthfully for the State against Probst. At trial, Miller stated that he thought he saw Rickley get hit by gunfire at about the same time Probst fired her shotgun and that it was so close in time that he was uncertain whether the shot from Walla or the shot from Probst came first.[1] He said that when Probst begged him to help, he shot twice in Walla's direction but towards the ground about fifteen to twenty-five yards in front of Walla. Miller said that he then told Probst to hide both of their shotguns alongside the road.[2]

---

**1.** On the night of the incident, Miller told the police that Probst had fired the first shot.

**2.** The police searched the scene of the shooting and found a box of twelve-gauge, number two shot shells and two shotguns. Both guns smelled as if they had recently been fired. In

Rickley testified that she got out of the pick-up truck in order to remove tires from the roadway when Walla, in the darkness, started yelling at her from his land. She said that Walla then started shooting at her. She was struck in the leg. Rickley testified that she did not remember any gunfire since everything happened quickly and being shot frightened her.

James Miller, Jr., ten-year-old son of Miller, testified that he saw Rickley get shot and fall after first hearing a discharge from a "bullet gun," not a shotgun. He then saw his aunt, Probst, fire her shotgun into the field. He testified that his father fired twice into the weeds.[3]

Two neighbors who heard the exchange of gunfire that evening also testified. Roger Davis stated that he was taking a walk between 8:00 and 8:30 p.m. when he heard three shotgun blasts followed by a short pause and then a mixture of shotgun blasts and small arms fire. John Gosch testified that he was watching television when he heard what he described as a rapid series of shotgun blasts followed by a slower series of small arms fire.

### The Parties' Contentions

The theory upon which Probst was indicted and upon which the trial commenced was that Probst shot Walla. The indictment read "RUTH ANN PROBST on the 4th day of April, 1985, in the County of Kent, State of Delaware, did unlawfully and intentionally at R.D. # 2, Box 44, Hartley, Delaware, shoot Frank J. Walla with a shotgun, a deadly weapon, causing physical injury to the said Frank J. Walla." In his opening statement to the jury, the prosecution stated that it would prove that Probst fired at Walla first and that it was the shot from Probst's gun, not her brother Miller's gun, that hit Walla. The opening statement of Probst's attorney to the jury indicated that her defense would be that Walla was hit by the shots from Miller's gun.

When the closing arguments were made to the jury, the State introduced a new theory of criminal liability against Probst. In his opening summation to the jury, the prosecutor stated:

> I believe that Mr. Reardon is going to argue that, hey, Mr. Miller shot. I am suggesting to you that is not true, but if you believe that then the State suggests to you another liability for Miss Probst; one, that she intended, that is, it was her conscious object that the defendant Mr. Miller—excuse me, that Mr. Miller, she intended Mr. Miller shoot him, intentionally shot him with the shotgun and hurt him and she solicited, requested that, commanded, otherwise opportuned him to do it, and aided him in doing so.

As soon as the prosecutor mentioned this new theory of accomplice liability for Probst, the trial judge *sua sponte* interrupted his closing and took a recess to confer with counsel about "a legal question." Following the recess, the prosecutor resumed his argument to the jury under both theories of liability for Probst, i.e., as a principal or as an accomplice:

> Putting that altogether, ladies and gentlemen, I suggest to you that she did intend, if you do believe he shot him, she did intend her brother shoot Mr. Walla then she did solicit, request, command him to do it and also aided him by the things I have mentioned and therefore she is guilty—if you believe that he shot him, then she is guilty as an accomplice because of the things I have just mentioned. So keep that in mind too, but, ladies and gentlemen, I suggest to you that it was Miss Probst who shot him because it was the first shot.

There is no record of the recess that was taken during the prosecution's closing. However, the record of the prayer conference that preceded the closing arguments reveals that the attorneys were in sharp disagreement about the introduction into the case of the State's alternative theory

---

Probst's gun was found a "spent" number two shot shell; another "spent" number two shot shell was found in the lane.

3. James Miller, Jr., did not initially tell the police that his father had fired any shots because "he did not want his father to be put in jail."

for Probst's criminal liability. Probst's attorney objected to any instruction on Probst's liability as an accomplice if Miller's shots were, in fact, the ones that struck Walla.

The State argued that Probst could be held accountable for Miller's conduct since she encouraged him to shoot. The State cited 11 *Del.C.* § 271 in support of its theory of alternative liability for Probst. That statute provides that: "A person is guilty of an offense committed by another person when ... [i]ntending to promote or facilitate the commission of the offense [s]he ... [s]olicits, requests, commands, importunes or otherwise attempts to cause the other person to commit it...." 11 *Del.C.* § 271(2)(a). Delaware law also provides that a person indicted for committing an offense as a principal may be convicted as an accomplice to another person guilty of committing the offense. 11 *Del.C.* § 275(a).

Probst's attorney pointed out that Miller was not charged with any crime. He also stated that if Miller had been charged criminally, he would have been relieved of liability by shooting in the direction of Walla in self-defense or in defense of others. 11 *Del.C.* §§ 464–465. In essence, Probst's attorney argued that since Miller was not charged criminally—and if he had been, he would not be criminally accountable—there was no basis for an accomplice liability charge against Probst.

The trial judge ruled that he would instruct the jury on the State's alternative theories of criminal liability for Probst as a principal or as an accomplice to Miller. However, the trial judge also agreed to instruct the jury that it could consider whether or not Miller was justified in shooting Walla in self-defense or in the defense of others.

Therefore, the State's final theory of the case, as submitted to the jury, was: (1) Probst shot Walla; and (2) in the alternative, if Miller shot Walla at Probst's request, Probst was still criminally liable as

an accomplice to that act. Probst's final theory of the case, after the trial court's ruling, may be summarized as follows: (1) she did not shoot Walla; (2) her brother, Miller, shot Walla but was justified in doing so; and (3) hence, even if Miller shot Walla because she importuned him to do so (thus rendering her liable for her brother's acts as an accomplice under 11 *Del.C.* § 271), she was nevertheless relieved of criminal liability therefor by Miller's justification for shooting (11 *Del.C.* §§ 464–465).[4]

### *Jury Instructions at Trial*

The trial judge delivered the following instructions to the jury in the following order: (1) second degree assault (Probst as principal); (2) second degree assault (Probst as accomplice); (3) the defense of justification (self-defense and defense of others) to Probst's liability as an accomplice; and (4) possession of a deadly weapon during the commission of a felony (Probst as principal). The trial court was not requested and did not instruct the jury with respect to accomplice liability for the weapon's offense.

When the trial court instructed the jury on Probst's liability for the conduct of her brother as to the second degree assault charge, it used masculine gender pronouns to describe Probst. Following this instruction, the trial judge instructed the jury on the defenses to which Probst's brother might have been entitled, i.e., justification of self-defense and defense of others, had he been charged with a criminal act. The trial court then returned to the felony weapon's charge against Probst. Once again the trial judge used masculine pronouns to describe Probst in the felony weapon's offense charge.

On appeal, Probst argues that the sequence of these instructions and the use of masculine pronouns in reference to Probst made the instructions materially inadequate because the jury may have been confused as to whether it was evaluating Probst's conduct or her brother's conduct.

---

**4.** The argument by Probst's attorney to the jury was consistent with the court's ruling. He argued that Miller, not Probst, had fired the shot which hit Walla and that Miller was justified in his conduct.

First, Probst contends that the jury would be confused as to the intent required for accomplice liability because the instruction mistakenly uses the masculine gender to refer to the requisite state of mind. Second, Probst argues that the jury may have incorrectly considered the felony weapon's offense charge in the context of the accomplice liability charge regarding the conduct of Probst's brother. She argues that any confusion here was highly prejudicial since she and her brother were both armed.

*Plain Error Standard*

 No exceptions were made at trial to any of the jury instructions on the grounds that are currently before us, although Probst's attorney did object to an instruction on the theory of accomplice liability. This Court will generally decline to review contentions not raised and not fairly presented to the trial court for decision. *Jenkins v. State*, Del.Supr., 305 A.2d 610, 613 (1973). The failure to object at trial usually constitutes a waiver of a defendant's right to raise the issue on appeal unless the error is plain. *Goddard v. State*, Del.Supr., 382 A.2d 238, 242 (1977). *See also* Super.Ct.Crim.R. 30(a), 52(b).[5] Therefore, we must determine whether the instructions to the Probst jury were erroneous as a matter of law and, if so, whether those errors so affected Probst's substantial rights that the failure to object at trial is excused. Supr.Ct.R. 8.

 In undertaking this evaluation, the jury instructions must be viewed as a whole. *See Flamer v. State*, Del.Supr., 490 A.2d 104, 128 (1984). Although some inaccuracies may appear in the jury instructions, this Court will reverse only if

such deficiency undermined the ability of the jury "to intelligently perform its duty in returning a verdict." *Storey v. Castner*, Del.Supr., 314 A.2d 187, 194 (1973), *quoted in Flamer v. State*, 490 A.2d at 128. *See also Newnam v. Swetland*, Del.Supr., 338 A.2d 560, 562 (1975).[6] A trial court's charge to the jury will not serve as grounds for reversible error if it is "reasonably informative and not misleading, judged by common practices and standards of verbal communication." *Baker v. Reid*, Del.Supr., 57 A.2d 103, 109 (1947), *quoted in Flamer v. State*, 490 A.2d at 128.

*Gender Confusion*

Probst alleges that the trial court's employment of masculine gender pronouns in, and the sequence of, the jury instructions mandate reversal of her convictions under the plain error standard of review. The State acknowledges that on several occasions the trial judge used masculine pronouns in the jury instructions when referring to Probst. However, the State argues that taking the instructions as a whole, it is clear that the masculine pronoun was obviously referring to Probst and not Miller.

 Given the deference that jurors give to any directive from a trial judge, we cannot assume that the jurors discounted the repeated use of masculine pronouns in the references to Probst and did not ascribe them to Miller. "We need not, and indeed probably could not in each case, satisfy ourselves that the jury was *in fact* confused." *United States v. Beros*, 833 F.2d 455, 461 (3d Cir.1987) (emphasis in original). On appeal, our task is to determine in light of the allegations made

---

5. In *Wainwright v. State*, Del.Supr., 504 A.2d 1096, 1100 (1986), this Court wrote:
 Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process. *Dutton v. State*, Del.Supr., 452 A.2d 127, 146 (1982). Furthermore, the doctrine of plain error · is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clear-

ly show manifest injustice. *Bromwell v. State*, Del.Supr., 427 A.2d 884, 893 n. 12 (1981).

6. Moreover, "[t]o assure a fair and impartial trial, a jury must be adequately informed by the [trial court], not only regarding the State's burden of proof beyond a reasonable doubt to support a conviction, but also in respect to all the essential elements of the offense." *Taylor v. State*, Del.Supr., 464 A.2d 897, 899 (1983). "[I]t is plain error to fail to instruct the jury on the necessary elements of the crime." *Id.*

whether the potential for juror confusion existed.

■ We have reviewed the instructions in their entirety and conclude that the incorrect use of masculine gender pronouns in an accomplice liability instruction, where the alleged principal is a male and the alleged accomplice is a female, made it likely that the jury would be confused. We also find it likely that confusion might occur with regard to the felony weapon's charge by its placement following the instructions about Miller's possible justification for shooting. As a result of this placement, the jury may have been left with the impression that Probst was also charged with the weapon's offense as an accomplice when, in fact, she was only charged with this offense as a principal.

■ Jury instructions must be adapted to the factual situation of each case. *See Wiggins v. State,* Del.Supr., 210 A.2d 314, 316 (1965); *Bantum v. State,* Del.Supr., 85 A.2d 741, 752 (1952). In any criminal case, it is the duty of the jury to examine facts and assign to or eliminate criminal responsibility for specific individuals. The applicable principles of law and the identity of the persons involved must not be confused. *See Wiggins v. State,* 210 A.2d at 316; *Bantum v. State,* 85 A.2d at 752. We are not free to hypothesize that the jury was in agreement on the court's instruction. *Cf. United States v. Beros,* 833 F.2d at 461.

In considering the Probst jury instructions as a whole, we find that they failed to meet the "reasonably informative and not misleading" standard. *Baker v. Reid,* 57 A.2d at 109. *See also Flamer v. State,* 490 A.2d at 128. In particular, we cannot find that the errors or inadequacies of the instructions given were harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 23–26, 87 S.Ct. 824, 827–29, 17 L.Ed.2d 705 (1967); *United States v. Beros,* 833 F.2d at 463. There-

fore, Probst's convictions must be reversed.

### Single Theory Unanimity

■ We are also concerned that the instructions to the jury did not specifically state that the jury must be unanimous with regard to the mode or manner by which it found Probst guilty. In particular, the jury was not instructed that it must agree unanimously upon the particular act or acts of criminality, i.e., *actus reus.*

The State's case against Probst was submitted to the jury under the theory that Probst was guilty of shooting Walla herself or that she was guilty of shooting Walla as a result of importuning Miller to fire at Walla. The jury was instructed that its verdict must be unanimous,[7] as follows:

In summary, you may find the following verdicts as to each charge. First, as to the charge of assault in the second degree, you may find one of two verdicts: One, guilty as charged; that is, guilty of assault in the second degree or, two, not guilty of any offense—not guilty of assault in the second degree.

As to the charge of possession of a deadly weapon during the commission of a felony, you may find the defendant, one, guilty as charged or, two, not guilty. In other words, as to each charge against the defendant, you may either find him guilty or not guilty.

You should come to a separate and independent decision as to each charge and whatever decision you make must be unanimous.

In the routine case, a general unanimity instruction is sufficient to insure that the jury is unanimous on the factual basis for a conviction. However, this rule is inapplicable where there are factors in a case which create the potential that the jury will be confused. *United States v. Beros,* 833 F.2d 455, 460 (3d Cir.1987).[8] *Cf. Ciccaglione v. State,* Del.Supr., 474 A.2d 126,

---

7. Juror unanimity is required by Article I, Section 4 of the Delaware Constitution and Superior Court Criminal Rule 31(a). *Fountain v. State,* Del.Supr., 275 A.2d 251, 251–52 (1971).

8. In this case, the United States Court of Appeals for the Third Circuit adopted the analysis and rationale of the United States Court of Appeals for the Fifth Circuit in *United States v. Gipson,* 553 F.2d 453 (5th Cir.1977).

130 (1984). A more specific unanimity instruction is required "if (1) a jury is instructed that the commission of any one of several alternative actions would subject the defendant to criminal liability, (2) the actions are conceptually different and (3) the state has presented evidence on each of the alternatives." *State v. Edwards*, 10 Conn.App. 503, 524 A.2d 648, 653 (Conn. App.Ct.) (footnote omitted), *appeal denied*, 204 Conn. 808, 528 A.2d 1155 (Conn.1987). *See also United States v. Gipson*, 553 F.2d 453, 456–59 (5th Cir.1977).

■ In this case, the State argued that Probst was guilty by virtue of her own conduct or in the alternative as an accomplice to her brother's conduct. When the State chooses to prosecute under alternative or multiple theories, it must prove at least one of the theories beyond a reasonable doubt to the satisfaction of the entire jury. *United States v. Beros*, 833 F.2d at 462. The State cannot rely on a composite theory of liability, "producing twelve jurors who unanimously thought the defendant was guilty but who were not unanimous in their assessment of which act supported the verdict." *Id.* In this case, for example, it is possible that twelve jurors agreed that Probst was guilty of assault even though they may have been equally divided about whether the shot which struck Walla came from Probst's gun or from Miller's gun. *Gipson* recognized that "[t]he unanimity rule ... requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged." *United States v. Gipson*, 553 F.2d at 457–58.

■ On appeal, as we stated earlier, our task is to determine whether *the potential* for juror confusion existed, not whether the jury *in fact* was confused. *See United States v. Beros*, 833 F.2d at 461. We adhere to what has been characterized as the simpler and the constitutionally more correct rule:

> When it appears ... that there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts, the general unanimity instruction does not suffice. To correct any potential confusion in such a case, the trial judge must augment the general instruction to ensure the jury understands its duty to unanimously agree to a particular set of facts.

*United States v. Echeverry*, 719 F.2d 974, 975 (9th Cir.1983), *quoted in United States v. Beros*, 833 F.2d at 461. *Accord United States v. Payseno*, 782 F.2d 832, 837 (9th Cir.1986).

■ The Sixth Amendment to the United States Constitution requires that there be a conviction by a jury that is unanimous as to the defendant's specific illegal action. *United States v. Beros*, 833 F.2d at 462. The jury must be properly instructed to achieve such unanimity. We conclude that under the circumstances of this case, the Probst jury should have received specific instructions regarding jury unanimity with regard to their assessment of which act (Probst's shot or Miller's) supported the verdict. *Cf. id.* at 461–62. A specific instruction requiring unanimity on the theory of criminal liability for assaulting Walla would have also had a direct bearing upon the jurors' assessment of the weapons charge since both Probst and Miller were armed.[9]

---

9. The State argued in its closing that:
 > Of course, the issue is going to be did she shoot Mr. Walla, and I think it is clear, ladies and gentlemen, if she did shoot Mr. Walla that she intended to cause him physical injury. That is clear. You don't shoot someone with a shotgun without intending to cause them physical injury at the very least. It was lucky in this case there wasn't serious physical injury, but there was physical injury. Mr. Walla was hit with up to nineteen to twenty shotgun pellets.

 > Now, obviously the possession of deadly weapon during commission of a felony, you have a deadly weapon and she is charged with did unlawfully have in her possession, same address in Hartly [sic], Mr. Walla's address, a shotgun, a deadly weapon, during commission of assault; in other words, if you find she did indeed—beyond a reasonable doubt did indeed—she is indeed guilty of assaulting, shooting Mr. Walla with a shotgun, an intent to cause physical injury, then she is automatically guilty of possessing a deadly weapon

The absence of a specific unanimity instruction undoubtedly compounded the jurors' potential for confusion. However, it is unnecessary for us to reach the question of whether the failure to give a specific unanimity instruction in this case constitutes reversible error because of the gender confusion which provided an independent basis to reverse Probst's convictions. We have addressed that issue in this case only because there will be a new trial. If the State presents its case against Probst in the same manner at her next trial, it would be "appropriate to give a more detailed unanimity instruction." *Ciccaglione v. State*, 474 A.2d at 130.

### Conclusion

The other concerns with the jury charge that Probst has raised on appeal, but which were not raised in the trial court, should be addressed during the prayer conference at Probst's next trial. For the reasons stated herein, Probst's judgments of conviction in the Superior Court are REVERSED and this case is REMANDED for a new trial.

## ON MOTION FOR REHEARING EN BANC

Before CHRISTIE, C.J., and HORSEY, MOORE, WALSH and HOLLAND, JJ., (constituting the Court en banc).

HOLLAND, Justice:

This Court granted the State's motion for rehearing *en banc*. The rehearing was limited to the implications of this Court's opinion on the standard principal/accomplice jury instruction involving a single incident, which historically has required only general unanimity, and the requirement for a specific unanimity instruction under the facts and circumstances of this case.

 A *general* unanimity instruction is required in every criminal case. *Fountain v. State*, Del.Supr., 275 A.2d 251,

251–52 (1971). However, this Court does not hold that a *specific* unanimity instruction is required in every case where a defendant may be convicted as a principal or as an accomplice. In fact, this Court recognizes that even when principal and accomplice liability theories are advanced, a general unanimity instruction is usually sufficient in the absence of a defense request for a specific instruction or in the absence of unusual circumstances creating a potential for confusion, e.g., alternative incidents which subject the defendant to criminal liability. *See Shivers v. United States*, 533 A.2d 258, 261–63 (D.C.1987).

 The original opinion in this case recognizes that the unanimous verdict mandate which is set forth in the United States Constitution, the Delaware Constitution, and the Superior Court Criminal Rules "requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged." *United States v. Gipson*, 553 F.2d 453, 457–58 (5th Cir.1977). Therefore, in cases such as the one before the Court, because of the possibility of a nonunanimous verdict, when *one count* encompasses *two separate incidents*, the trial judge must instruct the jury that if a guilty verdict is returned, the jurors must be unanimous as to which *incident* they find the defendant guilty. *Hack v. United States*, 445 A.2d 634, 641 (D.C.1982).

The need for a specific unanimity instruction flows from the fact that the basis for liability stems from two separate incidents and *not* from the applicability of principal or accomplice liability with respect to one of the two incidents. The necessity for a specific unanimity instruction under a single count of an information or indictment depends upon whether each act or theory under the count involves a separately cognizable incident, e.g., "by reference to separate allegations and/or to separate defens-

---

during commission of a felony. That is clear. So really the key issue in this case, ladies and gentlemen, is is she guilty of assault in the second degree.

The State admits that it was not seeking Probst's weapon's conviction under an accom-

plice theory of liability. A specific unanimity instruction would have made it clear to the jurors that Probst's conviction for the weapon's violation did not follow automatically if the jurors concluded that Miller's shot had hit Walla.

es." *Scarborough v. United States*, 522 A.2d 869, 873 (D.C.1987) (en banc). "There is no danger of a nonunanimous verdict when one charge encompasses only a single incident. However, when one charge involves *two separate incidents*, the court must instruct the jurors that they must be unanimous as to which incident they rely upon as a basis for their verdict." *Owens v. United States*, 497 A.2d 1086, 1093 (D.C. 1985) (emphasis added) (citations omitted), *cert. denied*, 474 U.S. 1085, 106 S.Ct. 861, 88 L.Ed.2d 900 (1986). The single charge against Probst was based upon two separately cognizable incidents (her shot and Miller's shot). The trial court also concluded that each incident was subject to separate defenses.[10]

In this case, the jury's identification of the incident which is the basis for liability necessarily identifies Probst's role as a principal or an accomplice. However, the requirement of *Gipson* that the jury must unanimously agree upon which incident is the basis for criminal liability has been held not to mean that the jury must identify the role of the defendant in that incident as either a principal or an accomplice. *United States v. Peterson*, 768 F.2d 64, 67 (2d Cir.), *cert. denied*, 474 U.S. 923, 106 S.Ct. 257, 88 L.Ed.2d 264 (1985). We agree with that interpretation of *Gipson* by the United States Court of Appeals for the Second Circuit.

Delaware law currently provides that a person indicted as a principal may be convicted as an accomplice and that a person indicted as an accomplice may be convicted as a principal. 11 *Del.C.* § 275.[11] In a case where the jury is instructed pursuant to Section 275, the jury must unanimously find that a principal-accomplice relationship existed between the participants with respect to a particular charge. There is no requirement, however, that the jury be unanimous in its view as to which of the parties was the principal and which was the accomplice.

 In a criminal charge involving one incident and two people, the jury is regarded as being unanimous if, without specifically identifying who was the principal and who was the accomplice, they all agree that one of the two actors performed all of the elements of the offense charged as a principal and that both actors knowingly participated in the alleged criminal act.[12] *Cf. United States v. Peterson*, 768 F.2d at 67; *United States v. Eagle Elk*, 820 F.2d 959, 961 (8th Cir.), *cert. denied*, — U.S. ——, 108 S.Ct. 191, 98 L.Ed.2d 143 (1987). This holding is consistent with the general principle of criminal law that one cannot be convicted as an accomplice unless the State's proof establishes that the substantive offense was committed by

**10.** Prior to the rehearing *en banc* in this case, the parties were asked to consider how the trial court should have supplemented its instructions if the following question had appeared in a note from the Probst jury.

Six jurors believe that Probst shot Walla. Although those same jurors do not believe that Miller shot Walla, they do believe that Miller was justified in shooting at Walla.

The remaining six jurors do not believe that Probst shot Walla. Those jurors believe that Miller shot Walla without justification.

Have we reached a verdict on the assault charge?

All parties agreed that the jury would not have reached a verdict because the jury would not be unanimous with respect to the criminality of a single incident.

**11.** The debate about principal and accomplice theories of criminal liability has continued for many years in this State and throughout the country. Under a prior statute, this Court held that an accessory was not a principal and that there could be no conviction of a defendant as an accessory upon an indictment as a principal. *Schwartz v. State*, Del.Supr., 185 A. 233, 234–36 (1936). That holding has been set aside by subsequent decisions of this Court and amendments to the statute. *Johnson v. State*, Del. Supr., 215 A.2d 247, 250 (1965); 11 *Del.C.* § 275. Section 275 currently reads:

(a) A person indicted for committing an offense may be convicted as an accomplice to another person guilty of committing the offense.

(b) A person indicted as an accomplice to an offense committed by another person may be convicted as a principal.

11 *Del.C.* § 275.

**12.** Therefore, in a case involving two people and a single incident, if the State cannot prove who actually caused the physical injury, it does not mean that both persons will escape criminal responsibility.

someone. *United States v. Bryan,* 483 F.2d 88, 93 (3d Cir.1973) (en banc).

This Court's concern about the need for an instruction on specific unanimity is expressed in the context of the unusual facts and circumstances of this case. Requests for instructions on the need for specific unanimity, even in a case involving principal and accomplice theories of liability, will continue to be decided by the trial court according to the factors present in each particular case. In this case, a specific unanimity instruction was desirable since there was one charge (assault) and evidence of two separate incidents (Probst's shots and Miller's shots) to support a conviction on alternate theories of liability. *Cf. Davis v. United States,* 448 A.2d 242, 243–44 (D.C.1982) (per curiam).