**Jarreau AYERS, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 623,2002.

Supreme Court of Delaware.

Submitted: Dec. 9, 2003.
Decided: March 12, 2004.

Anthony A. Figliola, Jr., Figliola & Facciolo, Wilmington, for appellant.

Kim Ayvazian, Department of Justice, Georgetown, for appellee.

Before VEASEY, Chief Justice, HOLLAND, BERGER, STEELE and JACOBS, Justices (constituting the Court en Banc).

HOLLAND, Justice:

The defendant-appellant, Jarreau Ayers ("Ayers"), was indicted on single counts of non-capital Murder in the First Degree, Conspiracy in the First Degree, Possession of a Firearm During the Commission of a Felony, and Possession of a Firearm by a Person Prohibited. Following a jury

trial, he was found guilty on all charges. He was sentenced that same day.

Ayers has raised four issues in this direct appeal. First, he argues that there was no rational basis in the evidence to instruct the jury that he could be found guilty as an accomplice, pursuant to Del. Code Ann. tit. 11, § 271. Second, he argues that the trial judge erroneously denied the defense's request for a unanimity instruction regarding whether he was a principal or an accomplice. Third, he contends that the trial judge erred in not instructing the jury on the lesser-included offense of assault. Finally, he argues that the trial judge erred by allowing the State to introduce excerpts of a witness's prior out-of-court tape-recorded statement, when the entire tape was available.

We have concluded that Ayers' arguments are without merit. Therefore, the judgments of the Superior Court must be affirmed.

### Facts

The background for this homicide began the day before Arthur Wells was killed. On January 21, 2000, a party was held for Gregory "Ya Yo" Simon in Wilmington, Delaware. The party ended around 1:30 a.m. As people were leaving, Keenan Anderson, who had attended the party, grabbed Regina Thomas, another guest. Ms. Thomas was the girlfriend of Tywaan "Reality" Johnson, who was also present at the party. Johnson told Keenan to keep his hands to himself. Keenan replied with an expletive. Johnson began screaming at Anderson. Anderson, who was only 5' 7" tall, asked for help from Ayers. Arthur Wells, the victim, attempted to intercede between Johnson and Anderson, telling both men to "chill." Anderson cursed again.

Wells grabbed Anderson by his neck and slammed him against a car. Kennard Ringold, another guest, then attempted to break up the fight between Wells and Anderson. As Anderson's friends started coming across the street to Anderson's aid, Johnson fired two shots into the air from a .45 semiautomatic handgun. Ayers then yelled to Johnson, "you busting your gun off, but you ain't killing nothing." Johnson then aimed his gun in Ayers' direction and fired. This caused everyone to disperse.

Anderson left in a car with someone known as "Black Swan." Thomas and Johnson got into a Jeep. Ayers drove off with Ringold. Ayers asked for Ringold's gun. About a block away from the club, Ringold gave Ayers his 9mm semiautomatic handgun, and Ayers exited the vehicle. The car in which Anderson had been riding was behind Ringold's car. When Ringold's car stopped and Ayers got out, Anderson got out of his car as well.

The two men walked back to the club. At the intersection of 7th and Tatnall, they saw a gold Nissan. Ayers shot at the car. When a police car responded to the scene, Ayers' and Anderson fled in different directions. They met at a nearby house where Ringold subsequently picked them up. As they had fled in different directions from the police, Ayers had thrown Ringold's gun away. He was later able to retrieve it.

The following evening, Ayers and Anderson attended a party on 35th Street in Wilmington. After the party, the two men left with Damon Gregory and others in Gregory's car. They drove to the Getty Station at the intersection of 30th and Market Streets to get some food. At the gas station, they met "Ya Yo" Simon. As Anderson was walking out of the store, he overheard Simon tell Ayers, "the boy you was [sic] beefing with the night before is over by the KFC." Across the street from the gas station was a Kentucky Fried

Chicken restaurant. Ayers and Anderson saw a Jeep Cherokee on the corner. At that point, it was unclear who was inside the Jeep, because the windows were tinted.

Ayers then walked over to Gregory's car and said something to Gregory. Gregory then drove his car across the street and parked behind the Jeep. Ayers and Anderson then walked across the street toward the Jeep. Ayers walked up to Gregory's car, leaned inside, and told Gregory to move the car, "because something might get messy." Gregory moved the car and was driving toward 30th and Tatnall when he heard some gunshots.

Gregory turned the corner and waited for a few minutes. Gregory saw Anderson and Ayers run towards Gregory's car. Both men got inside. Gregory asked the two men what had happened. First Anderson, and later Ayers, stated, "We handled that nigger." Gregory asked if they still had the gun that Ayers had used the night before. Ayers replied that he had thrown it behind Rash's Food Market.

Arthur Wells died as a result of gunshot wounds to the back and abdomen. The police recovered two 9mm bullets from Wells' body and clothing, and three 9mm shell casings at the scene. The police also recovered a 9mm semiautomatic handgun behind Rash's Food Market. The bullets and shell casings matched the bullets and shell casings found near the shoot-out the previous night. They were subsequently matched to the handgun Ringold had given to Ayers.

### Accomplice Liability Instruction Proper

At trial, the State's initial theory of its murder case against Ayers coincided with the Indictment: that Ayers shot Wells and was guilty as a principal. During the course of the State's case-in-chief, testimony elicited on cross-examination by the defense suggested the possibility that Anderson, and not Ayers, had shot Wells. Nevertheless, the State continued to contend that Ayers was the shooter. As a result of this testimony, however, the State began to develop the alternative position that if Anderson was the shooter, Ayers was liable as an accomplice.

After all evidence had been introduced, the trial judge presented counsel with draft jury instructions. The instructions included provisions for the State's alternative theory of accomplice liability. Ayers objected on the ground that the State had indicted Ayers on the theory that he was the principal who shot Wells and that there was no evidence to support a theory of accomplice liability. The trial judge overruled the objection. The accomplice liability instruction was given to the jury.

■ The record reflects sufficient evidence for the jury to find that Ayers was guilty as a principal by actually shooting Wells. Evidence introduced at trial that Ayers was guilty as the shooter included the following: testimony by Gregory that on the night of the shooting, Ayers told him to move his car because "something might get messy"; testimony by Ringold that the weapon used in Wells' murder was the same 9mm semiautomatic handgun he had given Ayers the night before; expert testimony linking that gun to the shooting of the gold Nissan; eyewitness testimony that Ayers had shot at the gold Nissan; testimony by Gregory that after the Wells' shooting Ayers had stated that Ayers had thrown the gun behind Rash's Market, the same location at which the gun was later recovered by the police; testimony by Gregory that after the Wells shooting, Ayers had said, "We handled that nigger"; and testimony by Anderson that Ayers shot Wells.

The record also includes evidence that Anderson was the person who actually shot Wells. Evidence introduced during the State's case-in-chief that Anderson was the shooter (principal) included the following: testimony that Wells had grabbed Anderson by the neck the night before the shooting; testimony by Gregory that: he saw Anderson, not Ayers, holding the gun at 30th and Market streets; Gregory knew Anderson was looking for Wells; Gregory knew Anderson was in the same area as Ayers at the time of the shooting; and that Anderson told Gregory, "We handled that nigger."

■ The record also includes evidence that, if Anderson actually shot Wells, Ayers was Anderson's accomplice. Evidence introduced during the State's case-in-chief that Ayers was Anderson's accomplice included the following: Ayers' statement to Gregory before the shooting to move his vehicle because "something might get messy"; Ayers' statement to Gregory after the shooting that he threw the gun behind Rash's Market; Ayers' statement to Gregory after the shooting that, "If anybody asked, we ride [sic] with you"; and Ayers' statement to Gregory after the shooting that, "We handled that nigger."

■ It is well established under Delaware law that a defendant can be indicted as a principal and then convicted as an accomplice.[1] Accordingly, Ayers was on notice that he could be convicted as an

accomplice.[2] Nevertheless, Ayers presented a defense that portrayed Anderson as the person who shot Wells[3] and sought to convince the jury that Ayers' presence was simply as an innocent bystander rather than as Anderson's accomplice.

A person is guilty as an accomplice when "[i]ntending to promote or facilitate the commission of the offense the person ... [a]ids, counsels or agrees or attempts to aid the other person in planning or committing it ...."[4] Although the State did not indict Ayers an as accomplice to the Wells' murder, the jury heard testimony, and was presented with other evidence, that Ayers aided Anderson. The record reflects sufficient evidence from which a jury could reasonably conclude that Ayers was Anderson's accomplice in the shooting of Arthur Wells. Therefore, we hold that the trial judge properly permitted the jury to consider Ayers' culpability both as a principal and under the State's alternative theory, as Anderson's accomplice.

### *Unanimity Instruction Not Required*

■ After the trial judge denied Ayers' objection to the accomplice liability instruction, the defense requested the jury be instructed that their verdict must be unanimous regarding whether Ayers was an accomplice or the principal. The trial judge denied that defense request. Ayers' second claim of error is that once the trial judge decided to instruct the jury on ac-

---

1. *See* Del.Code. Ann. tit. 11, § 275(a) (2001); *Dixon v. State*, 673 A.2d 1220, 1228 (Del. 1996); *Probst v. State*, 547 A.2d 114, 123 (Del.1988).

2. *Holder v. State*, 692 A.2d 882, 886 (Del. 1997).

3. Evidence produced during the defense's case that Anderson, and not Ayers, was the shooter included testimony by Ayers that it was Anderson who shot Wells and that Ayers was talking to a woman named Fatimah Ali

when the shooting occurred. Additional testimony included the following: testimony by Ali that she and Ayers were talking when they heard gunshots; testimony by witnesses that they saw Anderson with a gun on the night of the Wells shooting; testimony by Gregory that Anderson had the gun and did the shooting; and testimony by a jailhouse informant that Anderson told him Anderson had shot Wells.

4. Del.Code. Ann. tit. 11, § 271(2)(b) (2001).

complice liability, it was erroneous not to give a specific unanimity instruction with respect to that basis of Ayers' culpability, as either the principal or as an accomplice.

■ This Court has previously held that a specific unanimity instruction is *not* required in every case where a defendant may be convicted as a principal or as an accomplice.[5] A specific unanimity instruction *is* required, however, if "one count encompasses two separate incidents," either of which could support a defendant's conviction for a particular charge.[6] The law is well settled that a specific unanimity instruction is necessary only in certain limited instances, as when a single count in an indictment encompasses two separate instances of conduct.[7]

Wells' homicide involved a single individual with a single gun. Thus, it constituted a single incident. If the jury all agreed that Anderson and Ayers were involved in a principal-accomplice relationship and that one of the two men shot Wells, their verdict would be considered unanimous. The trial judge properly refused to require the jury to identify which man was the shooter and which was the accomplice.[8]

Under the circumstances of this case, the general unanimity instruction on the issue of principal and accomplice liability was proper. Where, as here, the count involved only a single incident, the jury must unanimously find only "that a principal-accomplice relationship existed between the participants with respect to that particular charge."[9] Accordingly, we conclude that the trial judge properly denied Ayers' request for a specific unanimity instruction on the State's alternate principal and accomplice theories of culpability.

### Assault Instruction Properly Denied

■ Ayers third argument is that the trial judge erred by denying the defendant's request for a jury instruction of assault as a lesser-included offense of homicide. The standard of review for a denial of a requested jury instruction is *de novo*.[10] Ayers argues that he was entitled to jury instructions on the lesser-included offense of assault on the State's theory of accomplice liability, pursuant to Del.Code Ann. tit. 11, §§ 271, 274 and *Chance v. State*.[11] The record reflects that the trial judge properly concluded there was no rational basis in the evidence for an instruction to the jury on assault.

As part of its instructions on accomplice liability, the Superior Court properly followed this Court's holdings in *Chance* and *Demby v. State*,[12] by instructing the jury on the lesser-included degrees of homicide. In the event the jury found that Ayers was Anderson's accomplice rather than an innocent bystander, that instruction permit-

---

5. *Liu v. State*, 628 A.2d 1376, 1386 (Del. 1993); *Probst v. State*, 547 A.2d 114, 122 (Del.1988).

6. *Liu v. State*, 628 A.2d at 1386; *Pope v. State*, 632 A.2d 73, 79 (Del.1993); *Probst v. State*, 547 A.2d at 122.

7. *Liu v. State*, 628 A.2d at 1386.

8. *See, e.g., Hendricks v. State*, 2002 WL 2030875, *1 (Del. Sept. 3, 2002); *Stevenson v. State*, 709 A.2d 619, 634–35 (Del.1998); *Dixon v. State*, 673 A.2d at 1228; *Pope v. State*, 632 A.2d at 79.

9. *Probst v. State*, 547 A.2d at 123.

10. *Yocum v. State*, 777 A.2d 782, 784 (Del. 2001).

11. *Chance v. State*, 685 A.2d 351 (Del.1996). Ayers had requested the instruction during the prayer conference. Upon the State's objection to the request, it was denied by the trial court.

12. *Demby v. State*, 744 A.2d 976 (Del.2000).

ted the jury to find Ayers guilty of a homicide offense in such degree as was compatible with his own mental state as the non-shooter.[13] The record reflects no rational basis in the evidence, however, for instructing the jury on assault.[14] Unlike *Chance,* where the various participants in the assault beat and kicked the victim to death, this case involved a lone gunman who walked up to Wells and shot him in the back and abdomen.

### Evidentiary Rule of Completeness

Ayers' final argument on appeal is that the trial judge erred by admitting into evidence only excerpts of a videotaped statement rather than the entire. tape. Ayers argues that the State violated the Best Evidence Rule when it provided only selected portions of the witness's video-taped statement rather than the entire tape. We review for abuse of discretion a trial judge's decision regarding the admission of such evidence.[15]

At trial, Simon testified for the defense and stated that, although he did not see Wells get shot, he saw Ayers with Fatimah Ali right before and after the shooting. He also testified that he told the police that Anderson killed Wells. Simon's testimony at trial, however, was contrary to his two prior statements to the police.

Following Simon's trial testimony, the State then called Detective John Ciritella to present Simon's prior out-of-court statements under Del.Code Ann. tit. 11, § 3507. In addition to Ciritella's testimony about these prior statements, excerpts from Si-

mon's videotaped statement on June 19, 2000 were played for the jury. When the State attempted to admit the excerpted tape into evidence, Ayers objected, arguing that under the Best Evidence Rule, the entire tape needed to be played for the jury, "whether I play it for the jury or the State does."

The trial judge postponed decision on the issue. Ayers later informed the trial judge of his intention to redact the entire tape and play it for the jury the following day. The next day, however, Ayers informed the trial judge that the redacted tape was "terrible," and he chose not to introduce it. He then asked the trial judge not to admit the State's excerpted tape into evidence and to instruct the jury not to consider it in any way. The Superior Court refused Ayers' application.

█ On appeal, Ayers argues that the State violated the Best Evidence Rule[16] when it provided only selected portions of the witness's videotaped statement rather than the entire tape. In response, the State submits that it was attempting to prove an event, i.e., the prior statement by Simon. Under the Best Evidence Rule, the State has the option of proving an event, such as Simon's prior statement, by offering the testimony of witnesses or by introducing a tape recording of the prior statement.[17]

In this case, the State elected to use the option of presenting testimony from Detective Ciritella to prove Simon's prior statement. The State then sought to corrobo-

---

**13.** *See* Del.Code Ann. tit. 11, § 274 (2001).

**14.** *See* Del.Code Ann. tit. 11, § 206(c) (2001).

**15.** *Longfellow v. State,* 688 A.2d 1370, 1372 (Del.1997).

**16.** *See* D.R.E. 1002; *Atkins v. State,* 523 A.2d 539 (Del.1987). In *Atkins,* this Court held

that it was contrary to D.R.E. 1002 to admit into evidence the transcripts to prove the contents of several tape recorded conversations instead of all of the original tape recordings which were available. *Atkins v. State,* 523 A.2d at 545.

**17.** *See Atkins v. State,* 523 A.2d at 542.

rate Ciritella's testimony with excerpts of the videotaped statement. Accordingly, Ayers' argument does not raise any proper concerns about a violation of the Best Evidence Rule.

 Instead, Ayers' argument implicates the rule of completeness, which is codified in D.R.E. 106.[18] In its common law form, the rule of completeness states that "one 'against whom a part of an utterance has been put in, may in his turn complement it by putting in the remainder, in order to secure for the tribunal a complete understanding of the total tenor and effect of the utterance.' "[19] The purpose of the rule of completeness is "to prevent misleading impressions which often result from taking matters out of context."[20] In this case, Ayers had the opportunity to correct any "misleading impressions" by presenting the entire (redacted) videotaped statement to the jury, but he chose not to do so.

Nevertheless, Ayers did cross-examine both Ciritella and Simon about Simon's prior statement. Simon testified that part of his conversation with the police was not recorded, and that the police told him what to say. Thus, the record reflects that Ayers used his own witness to correct any misleading impressions that may have been created by the State playing an incomplete tape. Under the circumstances of this case, we conclude that the trial judge properly exercised his discretion in allowing the State to play excerpts of Simon's prior videotaped statements to corroborate Detective Ciritella's testimony.

***Conclusion***

The judgments of the Superior Court are affirmed.

---

18.  D.R.E. 106 provides that:
   When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

19.  *Floudiotis v. State,* 726 A.2d 1196, 1213–14 (Del.1999) (quoting J. Wigmore, Evidence in Trials at Common Law § 2113, p. 653 (J. Chadbourn rev. 1978)).

20.  *Burke v. State,* 484 A.2d 490, 497 (Del. 1984).