# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,     )
     )
     )
   v.     )     Case ID No.: 2110007977
     )
     )
ALEXANDER DELGADO,     )
     )
   Defendant.     )

## ORDER

Submitted: May 17, 2023
Decided: July 21, 2023

## ORDER DENYING MOTION FOR A NEW TRIAL AND MOTION FOR JUDGMENT OF ACQUITTAL

**AND NOW TO WIT**, this 21st day of July 2023, upon consideration of Alexander Delgado ("Defendant")'s Motions for New Trial and for Judgment of Acquittal, the State's Response, the supplemental briefs from both parties and the record in this case, it appears to the Court that:

1.     A two-men armed robbery occurred at a Rite Aid store on 4th Street in Wilmington in June of 2021. For his role in that robbery, on November 8, 2021, Defendant was indicted for Robbery First Degree, Possession of a Firearm During the Commission of a Felony (PFDCF), and Conspiracy Second Degree.[1]

---

[1] Indictment, D.I. 1.

2. On April 19, 2023, this Court presided over Defendant's four-day jury trial.[2] The State's evidence was relatively straightforward. It was undisputed that the armed gunman was co-Defendant Keith Gibson ("Gibson"). A Rite Aid employee/cashier/victim testified that she saw two men standing outside the entrance of the store. She saw them don masks and gloves before they entered. The two masked men then entered the store together and proceeded directly to her. She was held at gunpoint by Gibson and ordered to put cash in a bag. She complied and also placed security money—holding a GPS tracker in the center of bills—in the bag.

3. In addition to the victim's testimony, the State introduced footage from the store's surveillance video that corroborated much of the victim's testimony. It also showed that while the victim was being held at gunpoint, Defendant took a red bag from his hooded sweatshirt, walked through a waist-high door separating the customer area from the cashier counter area, and proceeded behind the victim to steal Newport cigarettes behind the counter. The video also captures Gibson walking out with Defendant following behind.

4. The jury heard that Loss Prevention for Rite Aid tracked the GPS coordinates from the GPS device in the security money and shared the information with Wilmington police officers. The GPS coordinates showed that the security

---

[2] Defendant and Co-Defendant Gibson's charges were severed, and Defendant was tried separately.

money was moved to a certain location in Wilmington on W. 5th Street, where Defendant and Gibson were also located at an unoccupied property, less than two blocks away from the Rite Aid store.

5.     The State also presented footage from a responding police officer who was wearing a body-worn camera. The video depicts both Gibson's attempts to flee,[3] and Defendant standing on the deck rail of the unoccupied property watching Gibson's apprehension. On that same deck rail, police seized a Newport cigarette box with bills from the security money.[4]

6.     At trial, defense counsel argued that Gibson was the "bad guy" and his client was simply tagging along. Conceding identification, the defense strategy, therefore, focused on convincing the jury that Defendant should only be found guilty of the Lesser-Included Offense of Robbery Second Degree because the State failed to establish that Defendant was aware that Gibson was carrying and displaying a firearm during the robbery. Attempts to so convince were made by defense counsel

---

[3] During the officer's search of an adjacent street/alleyway near the GPS tracking information, body-camera footage shows Gibson jumping over a fence and kneeling near a handicapped ramp located at 814 W. 5th Street. Gibson was apprehended wearing a tactical belt with an empty firearm holster and a knife sheath carrying a large knife and a bulletproof vest. The police later found a handgun consistent with the gun displayed in the surveillance video under the handicapped ramp.

[4] Inside the unoccupied property, the police found a tie-dye blotch pattern hooded sweatshirt that matched Defendant's DNA, and appeared to be the same sweatshirt with tie-dye blotch patterns captured on the store's surveillance video. Defendant was arrested wearing clean white sneakers that also appeared to match the shoes of the suspect wearing the tie-dye sweatshirt in the video.

during closing arguments where he took the jury through a lengthy and detailed second-by-second account through blown-up still shots of the surveillance video.

7.     The jury was not persuaded.  On April 21, 2023, the jury deliberated for approximately one hour and returned verdicts of guilty as to all indicted charges, including Robbery First Degree.

8.     On April 25, 2023, Defendant filed a Motion for New Trial under Superior Court Criminal Rule 33 and a Motion for Judgment Acquittal under Rule 29.  The State opposed and the matter is now ripe for review.

## New Trial

9.     A motion for a new trial is addressed at the sound discretion of the court,[5] and considered under Rule 33 if the Court determines that a new trial is required in the interest of justice.[6]  Defense counsel asserts as much,[7] due to what is blamed on the Court for its failure to provide a correct accomplice liability jury instruction.  And recognizing that he failed to oppose, object, or take exception to that particular instruction and indeed, instead participated in the crafting and/or approval of the same, he now argues that his failure to object falls on the Court as plain error.[8]

---

[5] *State v. Matthews*, 2018 WL 6498694, at *4 (Del. Super. Dec. 10, 2018) (citing *Johnson v. State*, 628 A.2d 83, 1993 WL 245374, at *1 (Del. June 22, 1993) (Table).
[6] Del. Super. Ct. Crim. R. 33.
[7] Def.'s Mot. for New Trial, D.I. 31, at 1.
[8] *Id.*, at 2.

10. The State maintains that a new trial is not warranted where sufficient evidence supports findings of guilt for Robbery First Degree, PFDCF, and Conspiracy Second Degree,[9] and that the party autonomy rule prohibits Defendant from arguing for special jury instructions, which he failed to—or chose not to—request at trial.[10]

11. At the outset, whether or not his reasons were strategic, defense counsel cannot now complain about the position he took—or failed to take—regarding the instructions and/or his waiver of the right to challenge them.[11] Even if he had objected, Defendant is not entitled to a new trial.

12. Here, a prayer conference was held after both sides conferred. With respect to the language for accomplice liability, the Court considered the language under 11 *Del. C.* § 274 which provides that "[w]hen, . . . , 2 or more persons are criminally liable for an offense which is divided into degrees, each person is guilty of an offense of such degree as is compatible with that person's own culpable mental state and with that person's own accountability for an aggravating fact or circumstance."[12] Accordingly, "when an offense is divided into degrees, each participant is only guilty for the degree of a crime that is commensurate with their

---

[9] State's Resp. to Mot. for New Trial and Mot. for Judgment of Acquittal, D.I. 36, ¶¶ 9–14.
[10] *Id.* at ¶¶ 9–14; State's Supplemental Filing Citing Additional Legal Authority, D.I. 38, at 1.
[11] *See State v. Owens*, 2010 WL 2892701, at *7 (Del. Super. July 16, 2010); *State v. Perkins*, 2005 WL 3007807 (Del. Super. Nov. 9, 2005); *Probst v. State*, 547 A.2d 114, 119 (Del. 1988).
[12] 11 *Del. C.* § 274.

5

own mental culpability and their own accountability for an aggravating circumstance."[13] And that "an accomplice defendant, who was wholly *unaware* of another participant's intent to use a gun in a robbery, could not be convicted of Robbery in the First Degree."[14]

13. Consistent with the defense theory (challenging the State's proof of Defendant's knowledge or awareness that Gibson displayed a deadly weapon,) the Court agreed that the jury could consider the Lesser-Included Offense (LIO) of Robbery Second Degree. And the accomplice liability instruction further allowed the jury to consider both degrees of robbery.[15]

---

[13] *Allen v. State*, 970 A.2d 203, 213 (Del. 2009) (emphasis added).
[14] *Id.*
[15] The jury instructions that the Court provided for Accomplice Liability read, in part, as follows:

> For the defendant to be liable as an accomplice, you must be unanimously satisfied beyond a reasonable doubt that, either before the crime took place or at the scene of the crime, the defendant either participated in the planning or commission of the crime or actively encouraged the other person to commit the crime. This statute does not confer accomplice liability if the defendant participated *only* after the crime was committed. And if you determine after considering the evidence, that the defendant was merely present at or near the scene of the crime, without taking any action as described above that would make the defendant liable as an accomplice, then it is your duty to find the defendant not guilty as an accomplice.
>
> It is no defense under accomplice liability that the person with whom the defendant is alleged to have acted have not been prosecuted for or convicted of any offense based on the conduct in question. It likewise is no defense that the other person may have been convicted of a different offense or convicted of an offense in a different degree for the conduct in question. If you find that the defendant did not directly commit the robbery, but was an accomplice to that robbery, you should then go on to consider the following principle of the law of accomplice liability.
>
> The defendant has been charged with robbery in the first degree. Robbery is a crime that is divided into degrees based upon the aggravating fact or circumstance that one

6

14.    Defense counsel now argues that the instruction is deficient in that the "accountability" language in § 274 requires a physical act—an *actus reus*—rather than merely a *mens rea*, "which means that [Defendant] had to have conducted himself in order to aid Gibson in producing the weapon or carrying the weapon or using the weapon not just being in the same location . . . ."[16]   And that there "is not a sliver of evidence directed toward satisfying the second (physical act) of '274.'"[17] Specifically, that "since [he] was 'off in the woods' pursuing his passion for Newport cigarettes, and not even bothering to participate in the collection of [U.S.] currency[,]

knowingly or intentionally displayed what appeared a deadly weapon in the course of the commission of the crime.  And the degrees of robbery at issue here are: robbery in the first degree and robbery in the second degree.

If you unanimously find beyond a reasonable doubt that there was a principal-accomplice relationship between the defendant and another person with respect to the alleged robbery, you must also unanimously decide what degree of robbery is compatible with this defendant's own accountability for the aggravating fact or circumstance of knowingly or intentionally displaying what appeared a deadly weapon in the course of the commission of the crime regardless of the accountability of any principal for that same aggravating fact or circumstance.  In other words, even though you may find that the defendant was an accomplice in the robbery alleged, each accomplice, including defendant, is not necessarily guilty of robbery in the same degree.  I will in the next few instructions define each degree of robbery and elements required for each.

You are instructed that your verdict need not be unanimous as to whether the defendant acted as a principal or as an accomplice.  However, your verdict must be unanimous as to the defendant's guilt, whether as a principal, or as an accomplice; and must be unanimous as to the degree of robbery of which he is guilty.

Jury Instructions, at 9–11 (Apr. 21, 2023).

[16] Def.'s Mot. for New Trial, D.I. 31, at 3–5.
[17] *Id.* at 5.

and not even bothering to make any kind of remarks or expressions facilitating the successful collection of the cash taken[,] why should the punishment be identical[?]"[18]

15.    The answer is because the jury so determined after a proper instruction:

If you unanimously find beyond a reasonable doubt that there was a principal-accomplice relationship between the defendant and another person with respect to the alleged robbery, *you must also unanimously decide what degree of robbery is compatible with this defendant's own accountability for the aggravating fact or circumstance of knowingly or intentionally displaying what appeared a deadly weapon* in the course of the commission of the crime regardless of the accountability of any principal for that same aggravating fact or circumstance. *In other words, even though you may find that the defendant was an accomplice in the robbery alleged, each accomplice, including defendant, is not necessarily guilty of robbery in the same degree*.[19]

16.    That the jury did not agree with Defendant's theory is not a basis to provide him with a new trial. The jury free to consider the LIO of Robbery Second Degree as proposed by Defendant. Whether Defendant knew or was aware that Gibson was displaying a handgun during the robbery was for the jury to determine. And it unanimously found Defendant did. Nothing in the instruction was flawed to warrant a new trial under Rule 33.

**Motion for Judgment of Acquittal**

17.    Under Superior Court Criminal Rule 29,[20] in deciding whether to grant

---

[18] *Id.* at 4.
[19] Jury Instructions, at 10 (Apr. 21, 2023) (emphasis added).
[20] Superior Court Criminal Rule 29(c) provides that:

8

a motion for judgment of acquittal, the Court must view "all legitimately drawn inferences and evidence in a light most favorable to the State and determine whether a rational fact finder could have found the defendant guilty beyond a reasonable doubt."[21]

18. Defendant contends that under *Rosemond v. United States*,[22] this Court should determine that the evidence was not sufficient to support the verdicts, even viewed in the most favorable light to the State. The State maintains that the evidence was sufficient, and that *Rosemond i*s not applicable. The State is correct.

19. The premise of *Rosemond* while interesting is not applicable here. That case involved a federal crime, 18 U.S.C. § 924, to include two elements: (1) a drug deal or violent crime and (2) using or carrying a firearm in connection with that crime.[23] That defendant was charged with a § 924 violation by aiding and abetting. The United States Supreme Court held that the defendant must have intent to commit the whole crime, both the first and second elements, and as to the second element,

---

If the jury returns a verdict of guilty. . .a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged. . . . If a verdict of guilty is returned the court may on such motion set aside the verdict and enter judgment of acquittal. . . .

Del. Super. Ct. Crim. R. 29(c).

[21] *State v. Owens*, 2010 WL 2892701, at *4 (Del. Super. July 16, 2010).

[22] *Rosemond v. United States*, 572 U.S. 65 (2014).

[23] *Id.* at 65.

the defendant must have had advanced knowledge that his confederates would be armed.[24]

20. Defendant fails to cite to any authority to persuade this Court that acquittal of these state convictions is warranted because of the federal ruling in *Rosemond.* Here, Defendant's *mens rea* was properly considered under the accomplice liability jury instruction that tracked 11 *Del. C.* § 274 and allowed the jury to properly consider whether Defendant knew or was aware that Gibson was armed. The jury was free to consider what degree, if any, to assign to his criminal conduct. Accordingly, this Court will not disrupt the jury's determination where sufficient evidence supports its findings of guilt.

Defendant's Motion for New Trial and Motion for Judgment of Acquittal are **DENIED.**

/s/ Vivian L. Medinilla
Vivian L. Medinilla
Judge

oc: Prothonotary
cc: Defendant
Joe Hurley, Esquire
Matthew B. Frawley, DAG

---

[24] *Id.* ("An active participant in a drug transaction has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun. This must be advance knowledge—meaning, knowledge at a time when the accomplice has reasonable opportunity to walk away.").