William P. CICCAGLIONE, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted on Briefs: March 16, 1984.

Decided: March 29, 1984.

Patricia Hannigan, Asst. Public Defender, Wilmington, for defendant-appellant.

John A. Parkins, Jr., Deputy Atty. Gen., Wilmington, for plaintiff-appellee.

Before HERRMANN, C.J., McNEILLY and HORSEY, JJ.

McNEILLY, Justice:

Defendant appeals from his conviction of Felony Theft by a Superior Court jury. At the time of the incidents giving rise to the charges, defendant had been an officer in the Elsmere Fire Company and one of three individuals who had access to the company safe and knew its combination. The indictment of defendant was stated in the following terms:

> William P. Ciccaglione, between the 6th day of June and the 13th day of August, 1981, in the County of New Castle, State of Delaware, pursuant to a common scheme, did take and exercise control over, with intent to appropriate, United States Currency in an amount in excess of $300.00, belonging to the Elsmere Volunteer Fire Company, No. I., Inc.

In defendant's briefs submitted to the Court which includes additional briefing stipulated to by the State, defendant raises seven (7) issues regarding both the indictment and events arising at trial. We treat each individually.

## I

The first contention raised by defendant is that the indictment was constitutionally defective in that it failed to adequately inform the defendant of the essential facts of the charge against him as required by the Sixth Amendment. In particular, defendant asserts that he "was forced to file a Motion for Bill of Particulars, in order to ascertain the specific charges against which he had to prepare a defense." (We note that the State's answer to the defendant's motion identified three thefts made over the period of June 6, 1981 through July 17, 1981).

While it is generally true that a Bill of Particulars cannot remedy an otherwise defective indictment, *State v. Deedon*, Del. Supr., 189 A.2d 660 (1983), it has been consistently held that an indictment is not defective if it informs one of the nature of the charges in such a way as to enable a defense to be prepared and to protect one-

self against double jeopardy. *United States v. Goodman*, 5th Cir., 605 F.2d 870 (1979). *Accord, United States v. Boffa*, Del., 513 F.Supp. 444 (1980). Stated otherwise, "[s]pecificity does not determine the sufficiency of an indictment... Its validity is determined by practical not technical considerations" *United States v. Guthartz*, 5th Cir., 573 F.2d 225, 227 (1978). Due to our view of the indictment in the present case coupled with the fact that defendant has not shown any prejudice going to the preparation of his defense, we conclude that defendant was adequately informed of the charges against him and hence, the indictment was constitutionally sufficient.

▆ Defendant also asserts that the indictment was defective in that it prejudicially combined allegations of three separate incidents into a single duplicitous indictment. We find this claim against the validity of the indictment also to be without merit in that an indictment is not defective *per se* because each act standing alone could have been charged separately. *United States v. Cohen*, N.D.Cal., 35 F.R.D. 227 (1964) *aff'd sub num. Cohen v. United States*, 9th Cir., 378 F.2d 751 (1967) *cert. denied*, 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967). Further, it is particularly appropriate to combine incidents where the common scheme amounts to the common law offense of embezzlement. *United States v. Daley*, 1st Cir., 454 F.2d 505 (1972).

## II

Defendant's next contention is that certain remarks made by the prosecutor during his opening statement prejudicially affected substantial rights of the defendant. The remark in question was as follows: "In some respects I almost hope that the defense attorney ... will be able to destroy the State's case, because if he doesn't a fine man is going to be in a lot of trouble". Defense counsel raised timely objection to the remark and moved for a mistrial. The motion for mistrial was denied, but the objection was sustained. Whereupon, the

Trial Judge instructed the jury that the remark should be disregarded and that the burden of proof always remains on the State. Defense counsel in later opening statement reinforced to the jury the significance of the burden of proof being on the State.

▆ The determinations as to whether prosecutorial improprieties have prejudiced a defendant and the effectiveness of any steps taken to neutralize any possible prejudice generally are left to the discretion of the Trial Judge. *Bennett v. State*, Del. Supr., 164 A.2d 442 (1960). In effect, the Trial Judge "should declare a mistrial only where there is 'manifest necessity' for the act ...; it should never be granted for light or transitory reason which do not result in any real prejudice to the accused." *Wilhelm v. State*, C.A.Md., 272 Md. 404, 326 A.2d 707, 724 (1974) (citations omitted). Applying this standard to the instant facts, we find that the Trial Judge did not abuse his discretion in denying defendant's Motion for a Mistrial nor in denying a later Motion for New Trial raising the same point. Defendant has not demonstrated that the prosecutor's remark, in light of the Trial Judge's actions, prejudiced the jury denying him a fair trial.

## III

Defendant's fourth contention is that the Trial Judge admitted testimony regarding financial records by one not an expert which only confused the issues and misled the jury. The expert in question was employed as a state auditor and called by the State to testify regarding his analysis of the fire company financial records as well as those of the defendant and a company with which defendant was associated.

▆ In regard to the subject matter of the testimony presented, we find that the analysis of the fire company records was important in regard to the State's case to show that monies were in fact taken. As to financial analyses of the defendant and his company, the same was true in that it

may have established a motive on defendant's part. The importance of the evidence to the State's case is an important consideration in establishing its probative value. *United States v. Frick*, 5th Cir., 588 F.2d 531 (1979) *cert. denied* 441 U.S. 913, 99 S.Ct. 2013, 60 L.Ed.2d 385 (1979).

■ As to whether proffered evidence is substantially outweighed by the confusion of the issues or misleading of the jury, such matters are clearly within the discretion of the Trial Judge, and such rulings will be consistently upheld unless "it is shown that a ruling was a clear abuse of discretion or that it affected the substantial rights of the defendant." *United States v. Golden*, 10th Cir., 671 F.2d 369, 371 (1982) *cert. denied*, 456 U.S. 919, 102 S.Ct. 1777, 72 L.Ed.2d 179 (1982); *Accord, Bennett v. State*, Del.Supr., 164 A.2d 442 (1960). We find no abuse of discretion under the facts as presented.

■ With regard to whether the Trial Judge abused his discretion in admitting the testimony of a state auditor as an accounting expert, we likewise find no abuse of discretion.

> An expert need not have certificates of training nor membership in professional organizations.... Nor need he be an outstanding practitioner in the field in which he professes expertise. Comparison between his professional stature and the stature of witnesses for an opposing party may be made by the jury, if it becomes necessary to decide which of two conflicting opinions to believe.
> *United States v. Barker*, 6th Cir., 553 F.2d 1013, 1024 (1977). (Citations omitted).

## IV

■ Defendant's next contention is that the Trial Court committed plain error when it allowed the prosecutor to cross-examine the defendant's expert about defendant's income tax returns in such a way as to suggest that defendant had committed unrelated crimes; i.e., misreporting of income on a tax return. We fail to find, however, that a sufficient showing of error was made. Even if we accepted defendant's view of the cross-examination as accurate, it still does not rise to the level of "plain error" that would call for reversal "to avoid a miscarriage of justice", *United States v. Edwards*, 8th Cir., 443 F.2d 1286 (1971), *cert. denied*, 404 U.S. 944, 92 S.Ct. 295, 30 L.Ed.2d 259 (1971).

## V

Defendant's sixth contention is that it was prejudicial error for the Trial Court to deny defendant's request to instruct the jury that they had to find defendant guilty of all three charges in the Bill of Particulars before they could convict the defendant as indicted. We note, however, that defendant, after his request was denied, made no alternate request regarding any unanimity instruction. As a result, the Trial Judge gave a standard, general instruction on unanimity.

■ The prevailing concern in situations like these is whether the jury was in unanimous agreement as to which specific criminal acts a defendant committed. *United States v. Pavloski*, 7th Cir., 574 F.2d 933 (1978). And, while it may be appropriate to give a more detailed unanimity instruction if requested by a defendant, *Id.* at 936, there is no error of law unless "there should have been a directed verdict for a defendant on one of the specifications for insufficiency of the evidence." *United States v. Natelli*, 2d Cir., 527 F.2d 311, 335 (1975), *cert. denied*, 425 U.S. 934, 96 S.Ct. 1663, 48 L.Ed.2d 175 (1976). We find that sufficient evidence was introduced to go to the jury with respect to each alleged incident, therefore, absent a renewed request by the defendant that a more specific unanimity instruction be given, the general instruction was sufficient.

## VI

Defendant's final contention is that the Trial Court erred in refusing to grant the defendant's Motion for Judgment of Ac-

quittal in that the State failed to meet its burden of proof. The contention goes to two points; one, that the State failed to prove that a crime had actually been committed, and two, that defendant was the perpetrator. Neither assertion has any merit.

 Weighing the evidence presented in the light most favorable to the State, *Wiggins v. State*, Del.Supr., 306 A.2d 724 (1973), we find that it was sufficient to send the case to the jury. Further, a jury is permitted to draw inferences from circumstantial evidence as from any other evidence submitted. *Payne v. State*, Del. Supr., 367 A.2d 1010 (1976), and, circumstantial evidence adequate to support a finding of guilt need not be inconsistent with other possible hypotheses. *Cook v. State*, Del.Supr., 374 A.2d 264 (1977); *Henry v. State*, Del.Supr., 298 A.2d 327 (1972). Bearing this in mind, we find that there was sufficient evidence presented to support the jury's verdict.

\* \* \*

AFFIRMED.