IN THE SUPREME COURT OF THE STATE OF DELAWARE

ANTHONY JONES,            §
                                  §    No. 246, 2019
      Defendant Below,        §
      Appellant              §    Court Below: Superior Court
                                  §    of the State of Delaware
          v.              §
                                  §    Cr. ID: K1809008589 A&B
STATE OF DELAWARE,       §
                                  §
      Plaintiff Below,         §
      Appellee.              §

Submitted: February 5, 2020
Decided: April 13, 2020

Before **SEITZ,** Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

**O R D E R**

This 13th day of April, 2020, upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) Anthony Jones was convicted in the Superior Court of eighteen criminal offenses, including first-degree reckless endangering, second-degree kidnapping, aggravated menacing, second-degree burglary, second-degree conspiracy, coercion, criminal mischief, and numerous weapons charges. Jones was sentenced to a total of forty-one years in prison followed by probation.

(2) On appeal, Jones challenges seven of those convictions. He first argues that there was insufficient evidence to support his conviction of first-degree reckless

endangering. He also contends that the Superior Court erred when it denied his motion for judgment of acquittal as to the second-degree kidnapping charge related to his restraint of Desiree Vandewater. Additionally, Jones claims that the Superior Court erred when it did not, *sua sponte*, give a specific-unanimity jury instruction for the kidnapping and conspiracy charges. Lastly, Jones argues that his convictions of aggravated menacing and coercion were multiplicitous and are in violation of the Double Jeopardy Clause of the U.S. Constitution.

(3) We have concluded that Jones's contentions are without merit. Therefore, the judgments of conviction of the Superior Court must be affirmed.

*Background*

(4) On a Saturday morning in September 2018, as Jones and three others—Faron Wyatt, Desiree Vandewater, and Angela Greenwood—were travelling by car to what Wyatt and Vandewater believed was a cleaning job for which Jones would pay them "cash money,"[1] Jones asked Greenwood, the car's driver, to pull over so that he could "take a leak."[2] After Greenwood complied, Jones "went into the woods and acted like he was using the bathroom."[3] When Jones returned to the car, instead of proceeding to the cleaning job that Jones had purportedly arranged, Jones

---

[1] App. to Opening at A15.
[2] *Id.* at A16.
[3] *Id.*

2

redirected the group's journey with the assistance of a handgun pointed alternately at Wyatt and Vandewater, but not Greenwood.

(5) Jones directed Greenwood to drive the car to Grygo Road and, as she did, Jones threatened Wyatt and Vandewater, saying: "You're going to call them [or] . . . I'm going to shoot you."[4] The record is unclear regarding the person or persons Jones wished for the others to call, but Jones's subsequent actions suggest that he intended to look for his girlfriend, Lisa Kibler, and an unidentified man who had robbed him. The record is equally unclear as to why Jones was looking for his girlfriend, but Jones believed he would find her at Sandy Shahan's property on Grygo Road.

(6) Desiree Vandewater did not testify at Jones's trial but Wyatt described her demeanor through this ordeal as "[s]cared out of her wits."[5] In a similar vein, Wyatt said that, when Jones threatened him while waving the gun, he was "shaking . . . [and] scared for his life."[6]

(7) When the group (Jones, Wyatt, Greenwood, and Vandewater) arrived at Shahan's house on Grygo Road, Jones and Wyatt approached the door. Wyatt, in accordance with Jones's instructions, knocked on the door and asked Shahan to step outside. Shahan stepped outside, and when Jones asked her where Lisa Kibler was,

---

[4] *Id.*
[5] *Id*. at A17.
[6] *Id.* at A16.

3

she answered that Kibler was not home. Shahan testified that, while Wyatt was at her door, Jones was further away standing next to a tree. While they stood at the door, Jones shot his gun "once or twice" at a camper that was on Shahan's property, and, shortly thereafter, Jones and Wyatt got back in the car and left.[7] Wyatt testified that he "had to" leave with Jones because Jones had a gun and his girlfriend was still in the car.[8]

(8)    Jones, Wyatt, Greenwood, and Vandewater continued to drive around in search of Jones's girlfriend. They next drove to Buck Boyle's house, but no one was there. From Boyle's house, they drove to John Kibler's house on Equitation Lane. There, Jones ordered Wyatt, at gunpoint, to kick in the door, and Wyatt obliged. Once inside the home, Jones and Wyatt encountered John Kibler and a woman named Karen. Inside the residence, Jones was "[w]aving the gun around and trying to get ahold of the man that robbed him."[9] Jones pointed the gun at Wyatt and ordered him to break the windows and flatten the tires of the car parked outside, and once again Wyatt obeyed Jones's order. Afterwards, when Jones wanted to leave, he and Wyatt had a disagreement about whether Vandewater would continue to drive around with them. Ultimately, Vandewater did not return to the car. John Kibler now accompanied Jones, Wyatt, and Greenwood as they drove away from the

---

[7] *Id.* at A23.
[8] *Id.*
[9] *Id.*

Equitation Lane residence. But the car was soon pulled over by the police. Wyatt testified that seeing the police "was a sign of relief" and that he thanked the police and started "balling like a baby" when they pulled him out of the car.[10]

(9)     During a search of the car, the police uncovered a .45 caliber handgun and a box of .45 caliber ammunition tucked under the front passenger seat. The officers also found a "small clear plastic baggie with a white powdery substance in it"[11] and a "small glass pipe."[12]

(10)     A grand jury indicted Jones on charges of first-degree reckless endangering, seven counts of possession of a firearm during the commission of a felony, two counts of second-degree kidnapping, three counts of aggravated menacing, second-degree burglary, second-degree conspiracy, coercion, two counts of criminal mischief, and illegal possession of a controlled substance. At trial, the State dropped the drug charge.

(11)     After the State presented its case-in-chief, Jones moved the court for a judgment of acquittal on several, but not all, counts. The court entered judgment in Jones's favor on the aggravated menacing charge as to which Desiree Vandewater was the alleged victim. But the motion was denied as to the remaining counts, including the kidnapping charge related to Vandewater. The jury convicted Jones of

---

[10] *Id.* at A18.
[11] *Id.* at A29.
[12] *Id.* at A30.

the remaining charges. Following that, the judge convicted Jones in a bench trial, of possession of a firearm by a person prohibited and possession of ammunition by a person prohibited.

*Jones's Claims*

(12)    In this direct appeal, Jones makes the following arguments:

(i) there was insufficient evidence to convict him of first-degree reckless endangering, even though he did not move for judgment of acquittal as to this charge;

(ii) the trial court erred when it denied his motion for judgment of acquittal of the second-degree kidnapping charge because no rational trier of fact could conclude that Jones unlawfully restrained Vandewater for the purpose of either committing a felony or to terrorize her or a third person;

(iii) the trial court committed plain error by failing to inform the jury that, "if it unanimously found that Jones unlawfully restrained the victim, it must also be unanimous as to the purpose of the restraint in order to find him guilty of the kidnapping as charged"[13];

(iv) the trial court committed plain error when it failed to instruct the jury that to convict Jones of second-degree conspiracy it must unanimously conclude which felony Jones and his co-conspirator agreed to commit; and

(v) the aggravated menacing and coercion charges are multiplicitous and in violation of the Double Jeopardy Clause of the United States Constitution.

---

[13] Opening Br. at 18.

6

*Sufficiency of the evidence: first-degree reckless endangering.*

(13)   Generally, "[t]he standard of review in assessing an insufficiency of evidence claim is 'whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find [a] defendant guilty beyond a reasonable doubt.'"[14]   However, "in a jury trial, if a defendant fails to make a motion for acquittal to the trial court, the defendant has failed to preserve the right to appeal the issue of the sufficiency of the evidence to convict, and we would apply the plain error standard of review."[15]   After the State presented its case, Jones moved for judgment of acquittal but did not include the first-degree reckless endangering count (Count I, alleging that Jones recklessly engaged in conduct that created a substantial risk of death to Sandra Shahan) in his motion.   Therefore, this issue is subject to plain-error review.   "To constitute plain error, an error must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[16]

(14)   "A person is guilty of reckless endangering in the first degree when the person recklessly engages in conduct which creates a substantial risk of death to another person."[17]   Jones contends that the State did not provide sufficient evidence that his conduct—his firing of the gun at the camper trailer—created a substantial

---

[14] *Monroe v. State*, 652 A.2d 560, 563 (Del. 1995).
[15] *Britt v. State*, 113 A.3d 1080 (TABLE), 2015 WL 1973358, at *2 (Del. Apr. 28, 2015) (citing *Williamson v. State*, 2015 WL 1324351 at *2 (Del. Mar. 23, 2015)).
[16] *Goode v. State*, 136 A.3d 303, 312 (Del. 2016) (internal quotation marks omitted).
[17] 11 *Del. C.* § 604.

risk of death to Sandra Shahan.[18]  In support of his argument, Jones argues that, when he shot his gun at the camper on Shahan's property—the conduct that purportedly exposed Shahan to a substantial risk of death—Shahan was never in the line of fire and it was not "even feasible that she could have been hit by the bullet(s)."[19]

(15)  In *White v. State*, we held that "firing a gun in a residential neighborhood [was] enough to support a conviction of first degree reckless endangering."[20]  Likewise, "possible bullet fragmentation or ricochet is sufficient evidence to warrant a finding of a substantial risk of death as to an unintended victim located in the close vicinity of a shooting."[21]  This Court has also held that when a defendant pointed a gun at a driver on a busy highway, he created a substantial risk of death.[22]  Lastly, "firing a gun through an apartment door, when the defendant knew there was a person in the apartment" is adequate to support first-degree reckless endangering.[23]  In all these cases, the victim—or, in some cases, a class of victims— occupied the space in the general direction which the defendant aimed the gun, thus creating a substantial risk of death.

---

[18] Opening Br. at 8.

[19] *Id.*

[20] *White v. State*, 85 A.3d 89 (TABLE), 2014 WL 637050 at *1 (Del. Feb. 6, 2014) (citing *Hassan-El v. State*, 841 A.2d 307 (TABLE), 2004 WL 220322 (Del. Jan. 23, 2004)).

[21] *Britt*, 2015 WL 1973358 at *3. (citing *Bryant*, 862 A.2d 385, (TABLE), 2004 WL 2830900 at *1 (Del. Nov. 30, 2004)).

[22] *Thornton v. State*, 647 A.2d 382, (TABLE), 1994 WL 267300 at *2 (Del. June 9, 1994).

[23] *White,* 2014 WL 637050, at *1.

(16) Although Shahan's distance from Jones and the camper when Jones shot in the direction of the camper is not easily discernible from the trial testimony, the record does suffice to establish that Jones was acting erratically and "waving [the gun] around"[24] when he fired the shots that caused Shahan to fear for her life. And there was ample testimony, including photographs, regarding the configuration of Shahan's property and where each individual was standing when Jones shot at the camper. To be sure, it is difficult to reconstruct precise distances and angles from the written record. For instance, when Shahan was asked to describe the location of the camper in relation to her house, she responded that "[i]t was . . . from here to where that clock was,"[25] pointing to a clock in the courtroom, but never offered an estimate of that distance. But under plain error review—a standard that is applicable because of Jones's failure to raise this issue before the trial judge who was present in the courtroom when Shahan pointed at the clock—we need not grant Jones the benefit of the doubt that might arise from this gap in the appellate record. Rather, we only ask whether the alleged error—the failure to grant a motion to acquit due to insufficient evidence—was so prejudicial as to jeopardize the fairness and integrity of the trial process. We conclude that the trial judge's failure to enter a judgment of

---

[24] App. to Opening Br. at A22.
[25] *Id.* at A24.

9

acquittal *sua sponte* was not such an error because it did not clearly deprive Jones of a substantial right or work a manifest injustice.

*Denial of motion for judgment of acquittal on kidnapping charge*

(17)   Jones claims that the trial court erred when it failed to grant his motion for judgment of acquittal as to the second-degree kidnapping of Vandewater.

(18)   "We review an appeal from the denial of a motion for judgment of acquittal *de novo*."[26] Specifically, we will determine "whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find a defendant guilty beyond a reasonable doubt of all the elements of the crime."[27]

(19)   A person is guilty of kidnapping in the second degree when:

(a) the person unlawfully restrains another person with any of the following purposes:
   (1) To hold the victim for ransom or reward; or
   (2) To use the victim as a shield or hostage; or
   (3) To facilitate the commission of any felony or flight thereafter; or
   (4) To inflict physical injury upon the victim, or to violate or abuse the victim sexually; or
   (5) To terrorize the victim or a third person; or
   (6) To take or entice any child less than 18 years of age from the custody of the child's parent, guardian or lawful custodian
(b) and the actor voluntarily releases the victim alive, unharmed and in a safe place prior to trial.[28]

(20)   Jones does not contend that the State presented insufficient evidence of his unlawful restraint of Vandewater or his voluntary release of Vandewater alive,

---

[26] *Ways v. State*, 199 A.3d 101, 106 (Del. 2018).
[27] *Id.*
[28] 11 *Del. C.* § 783.

unharmed, and in a safe place. He argues, however, that the State did not present enough evidence to prove his purpose for unlawfully restraining Vandewater. In the indictment, the State alleged two of the statutory purposes: (1) to facilitate the commission of a felony; and/or (2) to terrorize the victim or a third person.[29]

(21) When it ruled on the motion for judgment of acquittal as to counts five and six, second-degree kidnapping and the related PFDCF, the trial court noted that Vandewater did not testify at trial.[30] But the court found that Wyatt's testimony that Vandewater was held at gunpoint "provide[d] reasonable inference that she was unlawfully restrained."[31] Accordingly, the trial court found that there was "sufficient evidence of record for the Court to find the State made out a *prima facie* case regarding [counts five and six] when the evidence is viewed in the light most favorable to the State."[32] Notably, however, the court did not specifically discuss the evidence related to the purpose of the unlawful restraint in its analysis. Although this omission is problematic, because our review is *de novo*, we may independently review the sufficiency of the evidence to determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt.

---

[29] App. to Opening Br. at A8.
[30] Ex. A to Opening Br.
[31] *Id.*
[32] *Id.*

(22) The State presented evidence, through Wyatt's testimony, that Jones held a gun to Vandewater's head throughout the night. Jones also repeatedly threatened Vandewater saying things like "I'll shoot you."[33] Additionally, Vandewater was described as being "[s]cared out of her wits."[34] That evidence, coupled with the fact that Jones's concession that he unlawfully restrained Vandewater, was sufficient to establish the Jones unlawfully restrained Vandewater for the purpose of terrorizing her. Alternatively, the evidence is sufficient to show that Jones unlawfully restrained Vandewater with the purpose of committing at least aggravated menacing, a class E felony of which Jones was convicted.[35]

*Jury instructions*

(23) Because Jones did not request a specific-unanimity instruction, we review this claim for plain error.[36] An error is plain when it is "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[37]

(24) Jones argues that the trial court committed plain error when it failed to inform the jury that, "if it unanimously found that Jones unlawfully restrained the victim, it must also be unanimous as to the purpose of the restraint in order to find

---

[33] App. to Opening Br. at A16.
[34] *Id.* at A17.
[35] "A person is guilty of aggravated menacing when by displaying what appears to be a deadly weapon that person intentionally places another person in fear of imminent physical injury." 11 *Del. C.* § 602(b).
[36] *Dougherty v. State*, 21 A.3d 1, 3 (Del. 2011).
[37] *Mills v. State*, 201 A.3d 1163, 1167 (Del. 2019).

him guilty of the kidnapping as charged." Further, Jones contends that the trial court committed plain error when it failed to instruct the jury that, to convict Jones of second-degree conspiracy, it must unanimously conclude which felony Jones and his co-conspirator agreed to commit.

(25) "[J]ury instructions must be viewed as a whole."[38] Even if the jury instructions contain a few inaccuracies, "this Court will reverse only if such deficiency undermined the ability of the jury 'to intelligently perform its duty in returning a verdict.'"[39] A trial court's jury instruction "will not serve as grounds for reversible error if it is 'reasonably informative and not misleading, judged by common practices and standards of verbal communication.'"[40]

(26) As to the two counts of second-degree kidnapping, the trial court instructed the jury as follows:

> In order to find the defendant guilty of Kidnapping in the Second Degree, you must find that State has proven the following four elements beyond a reasonable doubt: (1) the defendant restrained a person; (2) the defendant restrained the person with the intent to either facilitate the commission of a felony or to terrorize the victim or a third person;[41] (3) the defendant acted unlawfully; and (4) the defendant voluntarily released the person alive, unharmed in a safe place prior to trial.[42]

---

[38] *Probst v. State*, 547 A.2d 114, 119 (Del. 1988).
[39] *Id.*
[40] *Id.*
[41] App. to Opening Br. at A44.
[42] App. to Answering Br. at B17.

As to the one count of second-degree conspiracy, the trial court instructed the jury as follows:

> In order to find the defendant guilty of Conspiracy in the Second Degree, you must find the State has proven the following three elements beyond a reasonable doubt: (1) the defendant agreed with another person that one or more of them would engage in conduct constituting a felony or an attempt to commit a felony; (2) the defendant acted intentionally; and (3) one or more of the persons committed an overt act in furtherance of the conspiracy.[43]

Lastly, as a part of its final charge to the jury, the trial court stated, "[y]our verdict must be unanimous."[44]

(27)   "A general unanimity instruction informs the jury that the verdict must be unanimous, whereas a specific unanimity instruction indicates to the jury that they must be unanimous as to which specific act constitutes the offense charged."[45] "[A] general unanimity instruction typically suffices to insure [*sic*] that the jury is unanimous on the factual basis for a conviction."[46] But the general rule does not apply when "there are factors in a case which create the potential that the jury will be confused."[47] In *Probst v. State*, we recognized an exception to that might apply under one such scenario. Under the exception "[a] more specific-unanimity instruction is required if (1) [the] jury is instructed that the commission of any one

---

[43] App. to Opening Br. at A45.
[44] *Id.* at A51.
[45] 75A Am. Jur. 2d Trial § 1149.
[46] *Probst*, 547 A.2d at 120.
[47] *Id.*

14

of several alternative actions would subject the defendant to criminal liability, (2) the actions are conceptually different and (3) the State has presented evidence on each of the alternatives."[48]

(28)   *Probst* presented unique factual circumstances. Probst was indicted on the theory that she alone shot the victim.[49] But in its closing argument the State introduced a new theory of liability—that Probst's brother, Miller, actually shot the victim.[50] Therefore, the following two theories were presented to the jury: (1) that Probst shot the victim, or (2) that Miller shot the victim and that Probst was an accomplice. [51]  The trial court gave only a general unanimity instruction, which stated, "[y]ou should come to a separate and independent decision as to each charge and whatever decision you make must be unanimous."[52]  And when the court instructed the jury on Probst's potential liability for her brother's conduct, it incorrectly used masculine gender pronouns to describe the female Probst.  We held that "the incorrect use of masculine gender pronouns in an accomplice liability instruction, where the alleged principal is a male and the alleged accomplice is a female, made it likely that the jury would be confused."[53]  This conclusion was the basis of the reversal of Probst's convictions.  Because Probst's case was remanded

---

[48] *Id*. at 121–22 (internal quotations omitted).
[49] *Id.* at 117.
[50] *Id.*
[51] *Id.* at 120.
[52] *Id.*
[53] *Id.*

for a new trial, we also addressed the absence of a specific unanimity instruction and noted that "[i]f the State present[ed] its case against Probst in the same manner at her next trial, it would be 'appropriate to give a more detailed unanimity instruction.'"[54] But we were clear that the absence of such an instruction was not the basis for reversal.

(29) On a motion for rehearing *en banc* in *Probst,* we clarified that the exception requiring a specific-unanimity instruction is a limited one, stating that "a general unanimity instruction is usually sufficient in the absence of a defense request for a specific instruction or in the absence of unusual circumstances creating a potential for confusion, e.g., alternative incidents which subject the defendant to criminal liability."[55] We emphasized though that *Probst* presented "unusual facts and circumstances" and that a specific unanimity-instruction was not needed in every case presenting both principal and accomplice theories.[56]

(30) In our view, *Dougherty v. State* is more instructive than *Probst* for the purpose of addressing Jones's claim. In *Dougherty,* the defendant was charged with second-degree conspiracy and the overt act alleged was "engaging in conduct constituting burglary second degree, an attempt to commit that crime, or 'some other

---

[54] *Id*. at 122 (quoting *Cicaglione v. State*, 474 A.2d 126, 130 (Del. 1984).
[55] *Id.*
[56] *Id.* at 124

16

overt act' in pursuance of the conspiracy."[57]  The defendant unsuccessfully moved for judgment of acquittal and never requested a specific-unanimity jury instruction.[58] Therefore, the trial judge gave only a general-unanimity jury instruction.[59]  On appeal, the defendant argued that the trial court committed plain error by not, *sua sponte*, giving a specific-unanimity instruction requiring the jury to determine unanimously which particular overt act was committed.  Noting that "*Probst* was the exception to the rule that a general unanimity instruction typically is sufficient," [60] we held that "a trial judge does not commit plain error where defense counsel fails to request, and the trial judge does not give, *sua sponte*, a specific unanimity instruction on the overt act requirement of a conspiracy count."[61]

(31)    Comparing *Probst* (exception) and *Dougherty* (the rule), we follow the rule for two reasons.  First, the jury's consideration of various possible overt acts in *Dougherty* is closer to the jury's consideration of two possible statutory purposes for Jones's restraint of Vandewater and the predicate felonies underlying the conspiracy count than the *Probst* jury's determination of whether Probst acted as a principal or an accomplice.  Second, under plain-error analysis, given the clear evidence that

---

[57] *Dougherty*, 21 A.3d at 1.
[58] *Id. at 2.*
[59] *Id.*
[60] *Id.* at 1.
[61] *Id.* at 7 (*see also Soliman v. State*, 918 A.3d 339 (TABLE), 2007 WL 63359 at *2 (Del. Jan. 10, 2007) (In conspiracy prosecution, failing to provide specific-unanimity instruction was not plain error where the State did not argue alternative theories of liability.)

Jones terrorized Vandewater, it cannot be said that the purported error jeopardized the fairness or integrity of the trial process.

*Double Jeopardy*

(32)  "Issues that are not fairly raised to the trial court are reviewed for plain error."[62]  "Plain error occurs when an error is so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[63]

(33)  Jones argues that the aggravated menacing and coercion charges, in which Wyatt is the victim, are multiplicitous because "they stem from the same conduct, occur during the same transaction, involve the same victim and result in the same harm."[64]  Therefore, Jones claims that those charges violate the Double Jeopardy Clause of the United States Constitution.  "Both the United States and Delaware Constitutions provide that no person shall be twice put in jeopardy of life or limb for the same offense."[65]  "[T]he effect of the double jeopardy clause is to afford to criminal defendants several basic protections."[66]  Specifically, the Double Jeopardy Clause protects against: (1) successive prosecutions; (2) multiple charges under separate statutes; and (3) being charged multiple times under the same

---

[62] *Williams v. State*, 796 A.2d 1281, 1284 (Del. 2002).
[63] *Id.*
[64] Opening Br. at 31.
[65] U.S. Const. amend. V.; Del. Const. art. I, §8; *see also Tarr v. State*, 486 A.2d 672, 674 (Del. 1984).
[66]  *Tarr*, 486 A.2d at 674.

statute.[67]  At issue here is the second protection because the charges that Jones is challenging are under two separate statutes.

(34)  In *Blockburger v. United States*, the United States Supreme Court provided the rule that "two distinct statutory provisions that condemn the same conduct constitute separate offenses when 'each provision requires proof of an additional fact, which the other does not.'"[68]  The *Blockburger* test was codified in 11 *Del. C.* § 206. Section 206(a) states in relevant part that, "the defendant may not . . . be convicted of more than [one] offense if [o]ne offense is included in the other, as defined by subsection (b) of this section."[69]  Additionally, 206(b) states that an offense is so included when "[i]t is established by the proof of the same or less [*sic*] than all the facts required to establish the commission of the offense charged."[70]

(35)  "A person is guilty of aggravated menacing when by displaying what appears to be a deadly weapon that person intentionally places another person in fear of imminent physical injury."[71]  A person is guilty of coercion when:

> (a) the person compels or induces a person to:
>> a. Engage in conduct which the victim has a legal right to abstain from engaging; or
>> b. To abstain from engaging in conduct in which the victim has a legal right to engage;

---

[67] *Williams*, 796 A.2d at 1285.
[68] *Johnson v. State*, 5 A.3d 617, 620 (Del. 2010) (citing *Blockburger v. U.S.*, 284 U.S. 299, 304 (1932)).
[69] 11 *Del. C.* § 206(a)(1).
[70] 11 *Del. C.* § 206(b)(1).
[71] 11 *Del. C.* § 602(b).

(b) by means of instilling fear in the victim that if the demand is not met, the defendant or another will, among other things, cause physical injury to a person.[72]

(36)    Jones was convicted of aggravated menacing for intentionally placing Wyatt "in fear of imminent physical injury by displaying what appeared to be a deadly weapon, a handgun."[73]    Additionally, Jones was convicted with coercion because he:

> compel[led] or induce[d] [Faron Wyatt] to engage in conduct which Faron Wyatt ha[d] a legal right to abstain from, or to abstain from engaging in conduct in which Faron Wyatt ha[d] a legal right to engage, by means of instilling in Faron Wyatt a fear that, if the demand is not complied with, one will cause physical injury to a person.[74]

(37)    The aggravated menacing and coercion statutes are not included within each other under either *Blockburger* or Section 206.    Aggravated menacing requires proof of something that appears to be a deadly weapon; there is no such requirement for coercion.    Likewise, coercion requires proof that a person compelled another to engage in conduct that they had a legal right to abstain from, which is not an element of aggravated menacing.    Further, Jones's argument that these two convictions stem from the same underlying conduct is unavailing.    The aggravated menacing conviction stems from Jones holding a gun to Wyatt's head as they drove around while the coercion conviction is based on Jones ordering Wyatt to kick in the door

---

[72] 11 *Del. C.* § 791.
[73] Count seven of the indictment.  App. to Opening Br. at A9.
[74] Count nine of the indictment.  *Id.* at A12.

of the Equitation Lane residence and later to flatten the tires and break the windows of the car parked outside. Wyatt testified that, if he did not damage the car as instructed, then Jones "would put a bullet in me."[75] Therefore, the aggravated menacing and coercion convictions were not multiplicitous, and Jones's Double Jeopardy claim fails.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be affirmed.

BY THE COURT:

/s/ *Gary F. Traynor*
Justice

---

[75] *Id.* at A18.