IN THE SUPREME COURT OF THE STATE OF DELAWARE

KEEVEN HALE, §
§ No. 90, 2024
Defendant Below, §
Appellant, § Court Below—Superior Court
§ of the State of Delaware
v. §
§ Cr. ID No: 2110005576 (N)
STATE OF DELAWARE, §
§
Appellee. §

Submitted: October 9, 2024
Decided: December 16, 2024

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## **ORDER**

This 16th day of December, 2024, after consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) Keeven Hale was convicted on charges of criminal trespass in the first degree, assault in the second degree, offensive touching, and two counts of endangering the welfare of a child. He was sentenced to six years and 30 days incarceration, followed by probation. Hale seeks review only of his conviction on the charge of assault in the second degree. He argues that the Superior Court committed plain error by failing to give both a general-unanimity instruction and a specific-unanimity instruction to the jury after the State presented multiple theories

of liability on the assault charge. We conclude that there was no plain error and affirm.

(2) On October 12, 2021, around noon, Anya Jenkins dropped her two minor daughters off at her sister Ariyan Jenkins' apartment in Wilmington. Ariyan was babysitting Anya's daughters for the day so that Anya could celebrate her fiancée's birthday. Also in the house were two of Ariyan's children and her sister Ajaya.

(3) Later that day, Hale—who had been in an on-and-off relationship with Ariyan for about ten years—entered the apartment through Ariyan's bedroom window. Hale proceeded to the living room, where he attacked Ariyan with a wooden chair. At some point during the attack, Ariyan ended up on the couch next to Anya's three-year-old daughter K.O. Hale continued to strike Ariyan with the chair, and while doing so, Hale hit K.O. K.O. suffered a "large knot on her forehead over top of her right eye."[1] After the attack, Hale left the apartment through the same bedroom window.

(4) Those present in the apartment on October 12 identified Hale to police and Hale was arrested in March 2022. A grand jury indicted Hale on charges of burglary in the first degree, assault in the second degree, offensive touching, and

---

[1] App. to Opening Br. at A31.

four counts of endangering the welfare of a child. Hale's charge of assault in the second degree—Count II of the indictment—alleged that:

> KEEVEN HALE, on or about the 12th day of October 2021, in the County of New Castle, State of Delaware, did intentionally or recklessly cause injury to [K.O.] by means of a chair, a deadly weapon or dangerous instrument as defined in Title 11, Section 222 of the Delaware Code **and/or** being a person 18 years of age or older, did recklessly or intentionally cause physical injury to [K.O.], a person who has not yet reached the age of six (6) years.[2]

(5)     The Superior Court held a one-day jury trial on June 6, 2023. At trial, the State presented evidence to the jury that either (1) the chair—a deadly weapon or dangerous instrument—was used to injure K.O.; "and/or" (2) Hale was over 18 years old, and K.O. less than six years old at the time of the assault. In its closing argument, the State told the jury, "[Y]ou can find the defendant guilty of assault second degree under either [theory], you do not need to find [that] both [theories] exist."[3]

(6)     Because of the "and/or" language in Count II of the indictment, the trial court instructed the jury as follows:

> The State has proceeded in this case on [alternative] theories of liability for Assault Second Degree. Under the first theory, the State must prove the following elements:
> 1. Defendant caused the physical injury;
> 2. Defendant used a chair, a deadly weapon or dangerous instrument;
> 3. Defendant acted intentionally or recklessly.

---

[2] *Id.* at A5 (emphasis added).
[3] *Id.* at A201.

**[ALTERNATIVE] THEORY**

Under the second theory of liability, the State must prove the following elements:

1. The injured person was not yet six years old at the time of the assault;
2. Defendant was 18 years of age or older at the time of the assault;
3. Defendant acted intentionally or recklessly; and
4. Defendant caused physical injury.

It is no defense to the charge of Assault in the Second Degree that Defendant did not know the child's age at the time of the assault, or that Defendant reasonably believed the child was six years old or older at the time of the assault.[4]

The instruction concerning the charge of assault in the second degree did not contain a specific-unanimity instruction. And the jury instructions as a whole did not contain a general-unanimity instruction. At trial, Hale did not object to the absence of a general-unanimity instruction, nor did he request a specific-unanimity instruction for the assault charge.

(7) As mentioned above, Hale was convicted of criminal trespass in the first degree as a lesser included offense of the burglary charge, assault in the second degree, offensive touching, and two counts of endangering the welfare of a child. He was sentenced to six years and 30 days incarceration followed by probation.

(8) On appeal, Hale claims that the Superior Court erred by failing to provide the jury both general and specific-unanimity instructions. Hale argues that a specific-unanimity instruction was required because the State presented alternative

---

[4] App. to Answering Br. at B10–11 (emphasis added).

theories of liability on his assault charge. And because a general-unanimity instruction was not provided, Hale claims that this case is distinguishable from the "typical claim" based on the absence of a specific-unanimity instruction.[5]

(9) Because Hale did not object to the absence of a general-unanimity instruction or request a specific-unanimity instruction, we review his claim for plain error.[6] "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantive rights as to jeopardize the fairness and integrity of the trial process."[7]

(10) "A general unanimity instruction is required in every case."[8] But we have recognized that "some inaccuracies may appear in [jury instructions], [and we] will reverse only if such deficiency undermined the ability of the jury 'to intelligently perform its duty in rendering a verdict.'"[9] Accordingly, when a general-unanimity instruction is not given, we ask "whether or not the members of the jury in fact [knew] that their verdict [was] required to be unanimous."[10]

(11) In *Fountain v. State*, we held that it is clear from the practice followed in our trial courts that we can assume a jury in fact knows their verdict must be unanimous because: (1) a handbook is mailed to each juror prior to being called for

---

[5] Reply Br. at 3.
[6] *Dougherty v. State*, 21 A.3d 1, 3 (Del. 2011).
[7] *Id.* (quoting *Turner v. State*, 5 A.3d 612, 615 (Del. 2010)).
[8] *Probst v. State*, 547 A.2d 114, 122 (Del. 1988).
[9] *Id.* at 119 (quoting *Storey v. Castner*, 314 A.2d 187, 194 (Del. 1973)).
[10] *Fountain v. State*, 275 A.2d 251, 252 (Del. 1971).

service that distinctly informs jurors that a verdict must be unanimous; (2) the Prothonotary asks the foreman, "And so you say all?" once a verdict is reached; and (3) any party is entitled to poll each juror on whether the verdict reached was consistent with each juror's individual verdict.[11]

(12) The record in this case, viewed as a whole, indicates that the jury knew that their verdict needed to be unanimous. The trial court told the jury that they were "speaking with one voice" to reach a decision on the evidence.[12] The trial court clerk asked the foreman, "Has the jury agreed upon the verdict?[,]" to which the foreman replied, "Yes, they have."[13] The clerk then asked, "So say you all?[,]" to which the jury replied, "Yes."[14] Additionally, the verdict form stated that "[y]our verdict must be unanimous" directly above the line for the foreperson's signature.[15] All Superior Court jurors also receive a handbook prior to their service informing them that "[j]urors should seek to unanimously agree to a verdict" and that "if the jury cannot reach agreement after conscientious effort, the judge will declare a mistrial. . . ."[16]

---

[11] *Fountain*, 275 A.2d at 252.
[12] App. to Opening Br.at A230 ("you assume a unique role as 12 people speaking with one voice").
[13] *Id.* at A262.
[14] *Id.* at A265.
[15] App. to Answering Br. at B30.
[16] Delaware Superior Court Administrator, *Handbook for Jurors* 9 (2014), available at https://courts.delaware.gov/superior/pdf/petitjury_handbook.pdf.

(13)   Hale does not point to anything in the record showing that the jury did not know, in fact, that their verdict must be unanimous nor that the trial court made an incorrect statement of substantive law.  Though Hale correctly states that our pattern jury instructions—which include a general-unanimity instruction—[17]have become the standard for our trial courts, "a defendant has no right to have the jury instructed in a particular form"[18] as long as the instructions contain a correct statement of substantive law.  Accordingly, the absence of a general-unanimity instruction in this case does not amount to plain error.  Even so, we encourage our trial courts to include a general-unanimity instruction in their criminal jury instructions to avoid any possible confusion.

(14)   Hale's claim that the failure to give a specific-unanimity instruction was plain error is also meritless.  In *Probst v. State*, we held that generally a specific-unanimity instruction is not required because "a general unanimity instruction is sufficient to [e]nsure that the jury is unanimous on the factual basis for a conviction."[19]  But "[w]hen the [s]tate chooses to prosecute under alternative or multiple theories, it must prove at least one of the theories beyond a reasonable doubt to the satisfaction of the entire jury."[20]  If the state chooses to present alternative or

---

[17]   *See* Del. Super. Ct. Crim. Pattern Jury Instructions § 2.12 available at https://courts.delaware.gov/superior/pattern/pdfs/pattern_criminal_jury_rev5_2022a.pdf.
[18] *Miller v. State*, 224 A.2d 592, 596 (Del. 1966).
[19] *Probst*, 547 A.2d at 120.
[20] *Id.* at 121.

multiple theories, a specific-unanimity instruction is required if "'(1) a jury is instructed that the commission of any one of several alternative actions would subject the defendant to criminal liability, (2) the actions are conceptually different and (3) the state has presented evidence on each of the alternatives.'"[21] "[B]ecause of the possibility of a nonunanimous verdict, when one count encompasses two separate incidents, the trial judge must instruct the jury that if a guilty verdict is returned, the jurors must be unanimous as to which incident they find the defendant guilty."[22]

(15)   But the facts in *Probst* were unique.  In *Probst*, Probst was indicted on the theory that she alone shot the victim.[23]  But in its closing argument, the State introduced a new theory of liability, arguing that Probst's brother, Miller, actually shot the victim and that Probst was criminally liable as an accomplice.[24]  Despite the jury having been presented alternative theories of liability, the trial court gave only a general-unanimity instruction.[25]  We reversed Probst's convictions not because of the failure to give a specific-unanimity instruction, but because the trial court in *Probst* used masculine-gender pronouns to describe the female Probst.  We found that "the incorrect use of masculine gender pronouns in an accomplice liability

---

[21] *Id.* at 121 (quoting *State v. Edwards*, 524 A.2d 648, 653 (Conn. App. Ct. 1987)).
[22] *Id.* at 122.
[23] *Id.* at 117.
[24] *Id.*
[25] *Id.* at 120.

instruction, where the alleged principal is a male and the alleged accomplice is a female, made it likely that the jury would be confused."[26]  Because Probst's case would be remanded for a new trial, we noted that it would be "appropriate to give a more detailed unanimity instruction" given the State's presentation of alternative theories of liability.[27]

(16)    On a motion for rehearing *en banc*, we clarified that *Probst* is a narrow exception to the rule that a general-unanimity instruction is usually sufficient.  We wrote that "because of the possibility of a nonunanimous verdict, when one count encompasses two separate incidents, the trial judge must instruct the jury that if a guilty verdict is returned, the jurors must be unanimous as to which incident they find the defendant guilty.[28]  Additionally, we held that "[t]he necessity for a specific unanimity instruction under a single count of an information or indictment depends upon whether each act or theory under the count involves a separately cognizable incident."[29]

(17)    But "[t]here is no danger of a nonunanimous verdict when one charge encompasses only a single incident."[30]  Accordingly, we have declined to apply *Probst* in cases where there was only one underlying action.  In *Stevenson v. State*,

---

[26] *Id.*
[27] *Id.* at 122 (quoting *Ciccaglione v. State*, 474 A.2d 126, 130 (Del. 1984)).
[28] *Id.*
[29] *Id.*
[30] *Id.* at 123 (quoting *Owens v. United States*, 497 A.2d 1086, 1093 (D.C. 1985)).

9

we held that a specific-unanimity instruction was not required where a charge arose from "[a] fatal shooting . . . . [that] involved a single individual with a single gun."[31] Similarly, in *Hoskins v. State* we concluded that the shooting in that case stemmed from a single incident, failing to trigger the *Probst* analysis.[32] Most recently, in *Jones v. State*, we found that the *Probst* exception was inapplicable because the defendant's actions were the same, despite instructions on two possible statutory purposes for the defendant's actions.[33]

(18)    Hale argues that a specific-unanimity instruction was required because the alternative theories were "conceptually different" for the second-degree assault charge.[34] As mentioned above, the charge alleges the elements of 11 *Del. C.* § 612(a)(2), "recklessly or intentionally causes physical injury by means of a deadly weapon or dangerous instrument[,]" "**and/or**" 11 *Del. C.* § 612(a)(11), "[a] person who is 18 years of age or older and who recklessly or intentionally causes physical injury to another person who has not yet reached the age of six years."[35] Therefore, the question is whether some, but not all, jurors could have found Hale guilty of second-degree assault based on different findings as to the specific elements.

---

[31] 709 A.2d 619, 634 (Del. 1998).
[32] 14 A.3d 554, 565 (Del. 2011).
[33] 227 A.3d 1097, 2020 WL 1845887, at *6 (Del. Apr. 13, 2020) (TABLE).
[34] Reply Br. at 4.
[35] 11 *Del. C.* §§ 612(a)(2), 612(a)(11); App. to Opening Br. at A5 (emphasis added).

(19)     Two out of the three *Probst* requirements are met here.  The first element is met because the trial court instructed the jury on an alternative theory of second-degree assault at the State's request.  Second, the State presented evidence as to the instrument used by Hale during the assault, or in the alternative, evidence showing that Hale was over the age of 18 and K.O. was under the age of six at the time of the assault.  But it is questionable that the actions were so conceptually different as to require the trial court to *sua sponte* give a specific-unanimity instruction.  In our view, it is highly unlikely that the jurors were not persuaded of Hale's guilt on the age element but were satisfied that the State proved the use of a deadly weapon or dangerous instrument beyond a reasonable doubt.  Moreover, the basis for liability on Hale's second-degree assault charge encompasses only a single incident—Hale acted as a single individual in assaulting Ariyan, causing injury to K.O., with a single weapon.  The evidence was compelling that K.O. was struck with the chair and indisputable that K.O. had not reached the age of six years and that Hale was 18 years of age or older.

(21)     Finally, and perhaps most importantly, Hale did not request a specific-unanimity instruction.  Therefore, we review his claim under the plain error standard.  Considering that the evidence under both theories of liability was highly persuasive, if not overwhelming, any error embedded in the jury instructions was

11

not so prejudicial to Hale's rights as to compromise the fairness and integrity of his trial.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

12